UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| NEP HOLDINGS, INC., | Case No. 26-11988 (DSJ) |
| Debtor. | |
| In re: | Chapter 11 |
| NORTHEASTERN POWER AND GAS, LLC, | Case No. 26-11989 (DSJ) |
| Debtor. | |
| In re: | Chapter 11 |
| MAVEN ENERGY, LLC, | Case No. 26-11990 (DSJ) |
| Debtor. | |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) AUTHORIZING AND DIRECTING THE PREPETITION SECURED PARTY TO FACILITATE THE DEBTORS' USE OF CASH COLLATERAL, (IV) AUTHORIZING PAYMENT OF PREPETITION WAGES AND RELATED OBLIGATIONS, AND (V) SCHEDULING A FINAL HEARING**

Upon the emergency motion (the "Motion") of NEP Holdings, Inc. ("NEP Holdings"), Northeastern Power and Gas, LLC ("Northeastern") and Maven Energy, LLC ("Maven," and together with NEP Holdings and Northeastern, the "Debtors"), as debtors and debtors in possession, for entry of an interim order (this "Interim Order") pursuant to sections 105(a), 361, 362, 363, 503, 507, 541, 542 and 552 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-2 and 9077-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), seeking, among other things, (i) authorization to use cash collateral on an interim basis in accordance with the Budget, (ii) the grant of adequate protection to Axpo U.S. LLC ("Axpo" or the "Prepetition Secured Party"), (iii) authorization and direction to the Prepetition Secured Party to take the actions necessary to facilitate such use, including the release of funds to the Debtors, (iv) authorization to pay prepetition wages and related obligations, and (v) the scheduling of a final hearing (the "Final Hearing"); and this Court having

conducted an emergency hearing on August 19, 2026 (the "Emergency Hearing"), at which the Court granted certain relief and so-ordered the same orally on the record, effective immediately (the "August 19 Oral Ruling") **and a continued hearing or conference held on August 27, 2026 (the "August 27 Hearing")**; and upon the record of the Emergency Hearing**, the August 27 Hearing,** and all pleadings filed in these chapter 11 cases; and this Court having jurisdiction to consider the Motion; and it appearing that the relief granted herein is necessary to avoid immediate and irreparable harm and is in the best interests of the Debtors, their estates and their creditors; and after due deliberation and sufficient cause appearing therefor; **[DSJ 8/28/2026]**

**THE COURT HEREBY FINDS AND CONCLUDES:**

A. Petition Date. On August 19, 2026 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The petition of NEP Holdings was entered at 12:40 a.m.; the petition of Northeastern was entered at 12:45 a.m.; and the petition of Maven was entered at 12:53 a.m. (collectively, the "Petition Times"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee (a "Committee") has been appointed. A motion seeking joint administration of these chapter 11 cases for procedural purposes only, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 1015(b), is pending before this Court. As of the date hereof, no order directing joint administration has been entered, and this Interim Order is accordingly entered in each of the above-captioned chapter 11 cases. Upon entry of an order directing joint administration, the caption of this Interim Order shall be deemed conformed to the caption directed by such order, without prejudice to the effectiveness of this Interim Order in each of these chapter 11 cases. Joint administration of these chapter 11 cases**, if approved, will be** ~~is~~ for procedural purposes only and ~~does~~ **shall** not effect, and shall not be construed as effecting, the substantive consolidation of the Debtors' estates. **[DSJ 8/28/2026]**

B. Jurisdiction and Venue. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference of the United States District Court for the Southern District of New York, dated January 31, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief granted herein are sections 105(a), 361, 362, 363, 503,

507, 541, 542 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Local Rules 4001-2 and 9077-1.

C. Notice. Notice of the Motion and the relief requested therein has been provided to (i) the Office of the United States Trustee for Region 2; (ii) Axpo and its counsel; (iii) S&T Bank and TAB Bank; and (iv) the holders of the twenty (20) largest unsecured claims against each Debtor, to the extent practicable given the exigency. Given the nature of the relief and the immediacy of the Debtors' obligations, such notice constitutes due, proper and sufficient notice under the circumstances and complies with Bankruptcy Rules 2002, 4001(b), 4001(d) and 9014 and Local Rules 4001-2 and 9077-1, and no other or further notice is necessary or shall be required.

D. The Transaction Documents. The following description is derived from the Motion and is set forth for background purposes only. It does not constitute, and shall not be construed as, a stipulation, admission, concession or finding by the Debtors, their estates or any other party in interest as to any matter, including the validity, extent, priority, perfection or enforceability of any lien or claim asserted by the Prepetition Secured Party or the amount of any such claim, all of which are expressly reserved pursuant to paragraph 12 hereof.

(i) *The Transaction Documents.* On May 11, 2026, the Debtors and the Prepetition Secured Party entered into a package of agreements executed contemporaneously (collectively, the "Transaction Documents"), including: (a) an Energy Supply Agreement among Northeastern and Maven, as buyers, NEP Holdings, as "MezzCo," and the Prepetition Secured Party, as seller (the "ESA"); (b) a Pledge and Security Agreement among Northeastern, Maven and NEP Holdings, as pledgors, and the Prepetition Secured Party, as secured party (the "Security Agreement"); (c) a Parent Agreement between NEP Holdings and the Prepetition Secured Party (the "Parent Agreement"); (d) an Amended and Restated Schedule and Credit Support Annex to a 2002 ISDA Master Agreement between the Prepetition Secured Party and Northeastern and Maven (the "ISDA"); (e) a Forbearance Agreement between the Prepetition Secured Party and Northeastern (the "Forbearance Agreement"); and (f) a Termination and Release Agreement among Capital Foundry Lending, LLC, Northeastern, Maven and the Prepetition Secured Party (the "Termination and Release Agreement").

(ii) *The Security Agreement.* The Security Agreement grants the Prepetition Secured Party a security interest in substantially all assets of Northeastern and Maven, including their accounts, receivables, deposit accounts and the proceeds thereof (the "Prepetition Collateral"). NEP Holdings granted no lien on accounts, receivables or deposit accounts; its grant is limited to the pledged equity of Northeastern and Maven. Section 2.01(a) of the Security Agreement grants the security interest "[a]s collateral security," and Section 2.01(c) provides that the security interests are "granted as security only." Section 4.02 permits the Prepetition Secured Party to issue a notice of exclusive control, or to withdraw and apply funds from the controlled accounts, only upon the occurrence and during the continuance of an Event of Default, or following a Termination Event or Early Termination Date, and upon written notice to Northeastern and Maven.

(iii) *The Accounts.* Collections are directed to lockbox accounts. The Transaction Documents identify the following accounts (collectively, the "Accounts," and those subject to control, the "Controlled Accounts"): Northeastern lockbox at S&T Bank, account no. 3003601584; Northeastern lockbox at TAB Bank, account no. 380003922; Maven lockbox at TAB Bank, account no. 380004011; Northeastern operating account at S&T Bank, account no. 3005079086; and Maven operating account at S&T Bank, account no. 3004137604.

(iv) *The August 12 Notice.* The Prepetition Secured Party delivered a notice of default dated August 12, 2026 (the "August 12 Notice"), which recites an earlier Event of Default noticed on June 17, 2026 and sets a response deadline of "on or before Wednesday, August 19, 2026." The schedule to the August 12 Notice itemizes, among other things, a "Term Loan (due 8/11/2026)" of $1,500,000, "Loan Interest," "Payment Extension Interest," and "Collateral Interest."

E. <u>Cash Collateral</u>. The funds on deposit in, and collected through, the Accounts are property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code and constitute "cash collateral" of the Prepetition Secured Party within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral"). This finding is made for purposes of this Interim Order only and is without prejudice to the rights of any party at the Final Hearing.

F. Immediate and Irreparable Harm. An immediate and critical need exists for the Debtors to use Cash Collateral and to obtain the turnover of property of their estates in order to fund payroll, satisfy obligations to independent system operators and wholesale suppliers necessary to maintain the Debtors' supply arrangements, load-serving entity status and retail energy supply licenses, and preserve the going concern value of their businesses. Absent the relief granted herein, the Debtors' estates will suffer immediate and irreparable harm within the meaning of Bankruptcy Rules 4001(b)(2) and 6003(b).

G. Consent; Adequate Protection. At the Emergency Hearing, the Prepetition Secured Party consented, pursuant to section 363(c)(2)(A) of the Bankruptcy Code, to the Debtors' expenditure of Cash Collateral in the amounts and for the purposes authorized under the August 19 Oral Ruling, and the Court so found. The Prepetition Secured Party has consented to the Debtors' use of Cash Collateral in accordance with the Interim Budget on the terms set forth in this Interim Order. To the extent such consent is not given as to any use of Cash Collateral authorized hereunder, such use is authorized pursuant to section 363(c)(2)(B) of the Bankruptcy Code. The adequate protection provided in paragraph 6 of this Interim Order is fair and reasonable and is sufficient to satisfy the requirements of sections 361, 363(c) and 363(e) of the Bankruptcy Code for purposes of the Debtors' use of Cash Collateral authorized by this Interim Order, and is limited to the diminution in value, if any, of the Prepetition Secured Party's interests in the Prepetition Collateral from and after the Petition Date resulting from the Debtors' use of Cash Collateral ("Diminution in Value"). Nothing in this Interim Order constitutes a finding that any Diminution in Value has occurred or will occur, or as to the amount thereof.

H. August 19 Oral Ruling. At the Emergency Hearing, the Court orally so-ordered, effective immediately and without application of any otherwise applicable stay, the Debtors' expenditure of Cash Collateral in an aggregate amount not to exceed $596,500.00 on account of obligations to independent system operators and payroll, determined such expenditures to be an authorized use of cash collateral under section 363 of the Bankruptcy Code on the basis of the Prepetition Secured Party's consent under section 363(c)(2)(A), and further authorized and directed the Prepetition Secured Party to take all actions necessary to facilitate such payments, the release of funds to the Debtors, and any other step needed to effectuate the required transactions,

which direction has been fulfilled by the Prepetition Secured Party in all respects as of the date hereof.

I. No Stipulations. The Debtors have made no stipulation, admission or concession in the Motion or otherwise as to the validity, extent, priority, perfection or enforceability of any lien asserted by the Prepetition Secured Party, or as to the amount of any claim of the Prepetition Secured Party, and this Interim Order contains no such stipulation. All rights of the Debtors their estates, any Committee and all other parties in interest are fully preserved.

J. Immediate Entry. Good and sufficient cause has been shown to justify the immediate entry of this Interim Order, and the relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors' estates.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. Motion Granted. The Motion is GRANTED on an interim basis to the extent set forth in this Interim Order. Any objection to the interim relief granted herein that has not been withdrawn, waived or resolved is hereby overruled on the merits.

2. Ratification of the August 19 Oral Ruling. The August 19 Oral Ruling is ratified, confirmed and memorialized in all respects, effective as of August 19, 2026. All payments made by the Debtors, and all actions taken by the Prepetition Secured Party, in reliance upon the August 19 Oral Ruling are authorized, approved and ratified. Amounts expended pursuant to the August 19 Oral Ruling shall be credited against, and shall not be counted in addition to, the corresponding line items in the Budget.

3. Authorization to Use Cash Collateral. Subject to the terms of this Interim Order, the Debtors are authorized to use Cash Collateral during the period from the Petition Date through and including the Termination Date, solely for the purposes and in the amounts set forth in the budget annexed hereto as Exhibit A (the "Interim Budget" and, as it may be supplemented, extended or replaced with the prior written consent of the Prepetition Secured Party or by further order of this Court, the "Budget"), subject to the Permitted Variance. Nothing in this Interim Order shall obligate the Debtors to make any expenditure set forth in the Budget. Solely to the extent the Debtors lack sufficient cash on hand to pay any individual line item in the Interim Budget, the

Prepetition Secured Party is authorized, but not directed, in its sole and absolute discretion, to advance funds to the Debtors in such amounts as are necessary and appropriate to cover such shortfalls (the "Interim Discretionary Advances"), which Interim Discretionary Advances shall be secured by the Replacement Liens (as defined below).

4. Permitted Variance. Compliance with the Budget shall be tested every week, on a cumulative basis beginning on the Petition Date. The test is aggregate only; no line item shall be tested separately. The Debtors shall be in compliance so long as cumulative disbursements do not exceed cumulative budgeted disbursements by more than 10% during the weekly testing period (the "Permitted Variance"). The following shall not count as disbursements for this purpose: fees payable under 28 U.S.C. § 1930 and to the Clerk of the Court; amounts paid pursuant to a separate order of this Court; and any disbursement the Prepetition Secured Party approves in writing. Amounts budgeted but not spent in one testing period remain available in later periods.

5. Authorization and Direction to the Prepetition Secured Party. The Prepetition Secured Party is authorized and directed to take whatever actions are necessary to facilitate the Debtors' use of Cash Collateral in accordance with this Interim Order, the release of funds to the Debtors, and any other step needed to facilitate the required transactions, including: (a) releasing to the Debtors' operating accounts, in the amounts and at the times required to fund the Budget, funds held in or collected through the Accounts, including amounts collected or applied on or after the applicable Petition Times; (b) directing or permitting any depository institution party to a deposit account control agreement, including S&T Bank and TAB Bank, to release any restraint, hold or freeze on any Account and to honor the Debtors' instructions with respect to disbursements permitted hereunder; and (c) executing and delivering any instruction, release or other document reasonably requested by the Debtors to effectuate the foregoing. No action taken in accordance with this paragraph shall constitute a violation of the automatic stay, and no depository institution shall incur liability to any person for acting in accordance herewith.

6. Adequate Protection. As adequate protection, and in each case without any admission or concession as to the validity, extent, priority, perfection or enforceability of any lien or claim asserted by the Prepetition Secured Party, all rights as to which are expressly reserved, the Prepetition Secured Party is granted the following:

(a) *Replacement Liens.* Pursuant to sections 361(2) and 363(e) of the Bankruptcy Code, replacement liens in all assets of the Debtors, whether acquired before or after the Petition Date, with the same validity, extent and priority as the prepetition liens of the Prepetition Secured Party, if any, and no greater (the "Replacement Liens").

(b) *Postpetition Supply.* Payment in full, in the ordinary course, of all postpetition amounts owing to the Prepetition Secured Party on account of energy supplied after the Petition Date.

(c) *Reimbursement of Interim Discretionary Advances*. To the extent the Prepetition Secured Party makes any Interim Discretionary Advances, the Prepetition Secured Party is hereby authorized and directed to apply amounts in the Controlled Accounts to reimburse itself in the amount of any such Interim Discretionary Advances immediately upon sufficient funds being deposited into the Controlled Accounts and without further order of the Court.

(d) *Budget Compliance.* Compliance with the Budget, subject to the Permitted Variance.

(e) *Bank Account Statements.* Debtors shall provide copies of the Debtors' bank account statements to the Prepetition Secured Lender on a monthly basis.

(f) *Reporting.* Periodic reporting of collections, receipts and disbursements against the Budget, as set forth in paragraph 10.

(g) *Access.* Reasonable access to the Debtors' books, records and personnel during normal business hours upon reasonable prior notice, subject to applicable privileges, which are not waived, and to the Debtors' confidentiality obligations to third parties and applicable customer data privacy requirements.

(h) *Superpriority Claim.* An allowed superpriority administrative expense claim under sections 503(b) and 507(b) of the Bankruptcy Code (the "Superpriority Claim"), subject in all respects to the limitations set forth in paragraph 7.

7. Limitations on the Replacement Liens and the Superpriority Claim. The Replacement Liens (a) shall not attach to any claim or cause of action arising under sections 502(d), 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or any other avoidance, recovery or subordination action of the Debtors or their estates (collectively, "Avoidance Actions"), or to the proceeds thereof; (b) shall be junior and subordinate to the Carve-Out; and (c) shall not attach to any funds held in trust for a third party that are determined not to be property of the Debtors' estates. The Superpriority Claim (w) is limited in amount to the aggregate Diminution in Value actually suffered; (x) is junior and subordinate in all respects to the Carve-Out; (y) shall not be payable from, and shall not attach to, any Avoidance Action or the proceeds thereof; and (z) shall not be allowed in any amount until the amount of Diminution in Value has been determined by agreement of the Debtors and the Prepetition Secured Party **(subject to order of the Court upon request by any party in interest of the Office of the United States Trustee)** or **otherwise** by further order of this Court, upon notice and a hearing. **[DSJ 8/28/2026]**

8. Prepetition Wages. The Debtors are authorized, but not directed, to pay prepetition wages, salaries and related payroll obligations, and to remit associated withholding and payroll taxes, in an aggregate amount not to exceed approximately $25,000, subject to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. Amounts withheld from employee wages on account of taxes and similar obligations are held in trust, are not property of the estates, and may be remitted in the ordinary course.

9. Carve-Out. The Replacement Liens and the 507(b) Claim shall each be subject and subordinate to the Carve-Out. "Carve-Out" means the sum of (a) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930(a), together with interest payable under 31 U.S.C. § 3717; (b) all reasonable fees and expenses of any claims and noticing agent retained in these chapter 11 cases; and (c) all allowed and unpaid fees, costs and expenses of professionals retained under sections 327, 328, 363 or 1103 of the Bankruptcy Code ("Professional Persons"), in an aggregate amount not to exceed the amounts set forth for Professional Persons in the Budget, plus an additional $50,000 following the Termination Date. The Carve-Out shall not be reduced by any retainer held by any Professional Person to compensate the Professional Person for fees and expenses incurred prior to the Petition Date, but the Carve-Out shall be reduced by

any retainer available to pay fees and expenses incurred by a Professional Person after the Petition Date.

10. Reporting. The Debtors shall deliver to counsel to the Prepetition Secured Party (with a copy to the U.S. Trustee and counsel to any Committee): (a) on or before Wednesday of each week, commencing September 2, 2026, a variance report comparing actual cash receipts and disbursements to the Budget for the immediately preceding week and on a cumulative basis, with a reasonable explanation of any material variance; (b) on or before Wednesday of each week, a report of collections and an accounts receivable aging; (c) copies of all monthly operating reports concurrently with the filing thereof; and (d) prompt written notice, and in no event later than two (2) business days after a responsible officer of a Debtor obtains knowledge thereof, of any suspension, revocation, non-renewal or threatened suspension, revocation or non-renewal of any retail energy supply license or load-serving entity status. All reporting is subject to applicable privileges, which are not waived, and to the Debtors' confidentiality obligations to third parties and applicable customer data privacy requirements.

11. Termination Date. The Debtors' authorization to use Cash Collateral under this Interim Order shall terminate on the earliest to occur of (the "Termination Date"): (a) September 11, 2026, unless extended by written agreement of the Debtors and the Prepetition Secured Party or by further order of this Court; (b) the entry of an order at or following the Final Hearing, whereupon such order shall govern; (c) the conversion of any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code, or the dismissal of any of these chapter 11 cases; (d) the appointment in any of these chapter 11 cases of a trustee under section 1104 of the Bankruptcy Code, or of an examiner with expanded powers relating to the operation of the Debtors' businesses; (e) the effective date of a chapter 11 plan for any Debtor; (f) the entry of an order granting relief from the automatic stay to any creditor other than the Prepetition Secured Party with respect to assets having a value in excess of $50,000; (g) the entry of an order granting any lien or superpriority claim senior to or pari passu with the Replacement Liens, other than the Carve-Out and the liens permitted under paragraph 7, without the consent of the Prepetition Secured Party; or (h) the fifth (5th) business day following delivery by the Prepetition Secured Party of a written notice (a "Termination Notice") to the Debtors, their counsel, the U.S. Trustee and counsel to any Committee specifying a Termination Event (as defined below) that has occurred and is continuing

(such five (5) business day period, the "Remedies Notice Period"), unless the Termination Event is cured or waived during the Remedies Notice Period.

(i) *Termination Events.* Each of the following is a "Termination Event": (a) the Debtors' failure to comply with the Budget beyond the Permitted Variance; (b) the Debtors' failure to deliver any report required under paragraph 10 within two (2) business days after the date due; (c) the Debtors' breach of any other material provision of this Interim Order; (d) the Debtors' filing of any pleading seeking to vacate, amend or modify this Interim Order in a manner adverse to the Prepetition Secured Party without its consent; (e) the suspension or revocation of any retail energy supply license or load-serving entity status of any Debtor; (f) the occurrence of any postpetition Event of Default under the Transaction Documents; or (g) the failure of this Court to enter a final order by September 15, 2026, or such later date as the Prepetition Secured Party may agree in writing.

(ii) *Remedies Notice Period.* During the Remedies Notice Period, and until the conclusion of any Remedies Hearing, the Debtors may continue to use Cash Collateral to fund payroll, obligations to independent system operators, pipelines, local distribution companies and wholesale suppliers necessary to preserve the Debtors' licenses and supply arrangements, and the Carve-Out. During the Remedies Notice Period the Debtors, any Committee and the U.S. Trustee may seek an emergency hearing before this Court (a "Remedies Hearing"), on such notice as the Court may direct, solely to contest whether a Termination Event has occurred and is continuing and to seek continued authority to use Cash Collateral. The Prepetition Secured Party shall not exercise any right or remedy against the Accounts, the Prepetition Collateral or the Debtors' estates without first obtaining relief from this Court, and the automatic stay shall remain in full force and effect pending the conclusion of any Remedies Hearing. All rights of the Prepetition Secured Party to oppose such relief and to seek relief from the automatic stay are reserved.

12. <u>No Stipulations; Reservation of Rights</u>. This Interim Order contains no stipulation, admission or concession of any kind, and shall not be construed as a finding, as to (a) the validity, extent, priority, perfection or enforceability of any lien or security interest asserted by the Prepetition Secured Party; (b) the amount, validity, allowance or priority of any claim of the Prepetition Secured Party, whether arising under the Transaction Documents, as wholesale energy

supplier, under section 503(b)(9) of the Bankruptcy Code or otherwise; (c) the characterization of any prepetition or postpetition transfer; (d) whether any of the Transaction Documents is a forward contract, commodity contract, swap agreement or master netting agreement, or whether the Prepetition Secured Party is a forward contract merchant, swap participant or master netting agreement participant, within the meaning of the Bankruptcy Code; (e) the applicability of sections 555, 556, 560, 561 or 362(b) of the Bankruptcy Code; (f) the effect or sufficiency of the August 12 Notice or of any prior notice of default; or (g) the enforceability of the Parent Agreement or of any purported prepetition waiver of the automatic stay or of rights with respect to the use of cash collateral. All rights, claims, defenses and causes of action of the Debtors, their estates, any Committee and all other parties in interest are expressly preserved, including under chapter 5 of the Bankruptcy Code, with respect to any claim against the Prepetition Secured Party in any capacity, and with respect to the enforcement of the automatic stay and the turnover of property of the estates under section 542(a) of the Bankruptcy Code. All rights of the Prepetition Secured Party are likewise preserved. The Debtors and the Prepetition Secured Party may address stipulations, and the treatment of any of the matters described in this paragraph, in connection with the Final Order.

13. No Waivers. Consistent with the disclosure made under Local Rule 4001-2 in the Motion, this Interim Order grants no waiver of any right under section 506(c), 552(b) or 363(k) of the Bankruptcy Code, and no such waiver shall arise or be implied hereunder. All rights under those sections, including the "equities of the case" exception under section 552(b), and all rights with respect to the doctrine of marshaling, are preserved. Whether any such waiver should be granted, and on what terms, is reserved for determination in connection with the Final Order.

14. Modification of the Automatic Stay. The automatic stay is modified solely to the extent necessary to permit (a) the Debtors to grant the Replacement Liens and to perform their obligations under this Interim Order, (b) the Prepetition Secured Party to receive and retain payments made in accordance with this Interim Order and to take the actions authorized and directed under paragraph 5, and (c) the delivery of any notice required or permitted hereunder. The automatic stay is not otherwise modified, and nothing herein constitutes a waiver of, or consent to relief from, the automatic stay.

15. Local Rule 4001-2. Except to the extent of the Replacement Liens granted by NEP Holdings in all of its assets, this Interim Order does not contain, and the Debtors do not seek hereunder, any roll-up of prepetition debt, any waiver of rights under section 506(c), 552(b) or 363(k) of the Bankruptcy Code, any lien on or claim against avoidance actions or their proceeds, any case milestone, any change-of-control provision, any prepayment premium, any reimbursement of the fees or expenses of any prepetition secured party, or any stipulation as to the validity, extent, priority or perfection of any lien. Nothing in this paragraph limits the relief that may be sought by any party, or granted by this Court, in connection with the Final Order.

16. Preservation of the Debtors' Rights. Nothing in this Interim Order shall prejudice the Debtors' right to (a) seek authority to obtain postpetition financing under section 364 of the Bankruptcy Code, (b) seek approval of a sale of assets under section 363 of the Bankruptcy Code, (c) seek enforcement of the automatic stay or turnover of property of the estates, whether by motion or by adversary proceeding under Bankruptcy Rule 7001, or (d) oppose any motion by the Prepetition Secured Party, including any motion seeking dismissal of these chapter 11 cases or relief from the automatic stay. Nothing herein constitutes a case milestone or any agreement by the Debtors with respect to the marketing, sale or disposition of any asset or the filing or confirmation of any chapter 11 plan.

17. Binding Effect; No Third-Party Beneficiaries. The provisions of this Interim Order shall be binding upon and inure to the benefit of the Prepetition Secured Party, the Debtors and their respective successors and assigns, including any trustee or other estate representative appointed in these chapter 11 cases or in any superseding case under chapter 7 of the Bankruptcy Code, subject in all respects to paragraph 12. Except as expressly provided herein, no rights are created hereunder for the benefit of any third party.

18. Final Hearing. The Final Hearing shall be held on September 15, 2026 at 11:30 a.m., prevailing Eastern Time. Any objection to the entry of a final order shall be filed and served so as to be actually received by (a) proposed counsel to the Debtors, (b) counsel to the Prepetition Secured Party, (c) the U.S. Trustee, and (d) counsel to any Committee, no later than September 11, 2026 at 4:00 p.m. The Debtors shall promptly serve a copy of this Interim Order on the parties identified in paragraph C above and on all parties that have filed a notice of appearance, and shall file a certificate of service.

19. Conflicts; Headings. To the extent of any conflict between the terms of this Interim Order and the Motion or any prepetition agreement, the terms of this Interim Order shall govern and control. Paragraph headings are for convenience of reference only.

20. Effectiveness. This Interim Order shall be entered on the docket of each of the above-captioned chapter 11 cases or, if an order directing joint administration of these chapter 11 cases has been entered prior to the entry hereof, on the docket of the lead case in accordance with such order. This Interim Order shall be immediately effective and enforceable upon entry, and the requirements and any stay imposed by Bankruptcy Rules 4001(a)(3), 6003, 6004(a), 6004(h), 7062 and 9014, and any other applicable rule, are hereby waived to the extent necessary to permit such immediate effectiveness.

21. Retention of Jurisdiction. This Court retains jurisdiction to hear and determine all matters arising from or relating to the interpretation, implementation or enforcement of this Interim Order.

Dated: New York, New York
August 28, 2026

*s/ David S. Jones*
HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

# INTERIM BUDGET

## 13-WEEK CASH FLOW FORECAST — WEEK ENDING 08/24/2026 THROUGH 11/20/2026

NEP Holdings Inc. (26-11988) | Northeastern Power and Gas, LLC (26-11989) | Maven Energy, LLC (26-11990) — Consolidated, US$, unaudited

| Week # | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 5 | Wk 6 | Wk 7 | Wk 8 | Wk 9 | Wk 10 | Wk 11 | Wk 12 | Wk 13 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Beginning | 08/24/26 | 08/31/26 | 09/07/26 | 09/14/26 | 09/21/26 | 09/28/26 | 10/05/26 | 10/12/26 | 10/19/26 | 10/26/26 | 11/02/26 | 11/09/26 | 11/16/26 | |
| Week Ending | 08/28/26 | 09/04/26 | 09/11/26 | 09/18/26 | 09/25/26 | 10/02/26 | 10/09/26 | 10/16/26 | 10/23/26 | 10/30/26 | 11/06/26 | 11/13/26 | 11/20/26 | NOTE |
| Status | Petition wk | Post-petition | Post-petition | Post-petition | Post-petition | Post-petition | Post-petition | Post-petition | Post-petition | Post-petition | Post-petition | Post-petition | Post-petition | |
| **CASH POSITION — OPENING** | | | | | | | | | | | | | | |
| **OPENING CASH** | **449,026** | **570,604** | **575,397** | **637,226** | **590,556** | **688,453** | **535,625** | **796,121** | **619,016** | **560,816** | **134,000** | **76,974** | **283,541** | |
| **CASH RECEIPTS** | | | | | | | | | | | | | | |
| Customer collections — per Company forecast | 415,000 | 256,074 | 460,562 | 348,000 | 550,719 | 133,610 | 482,848 | 72,527 | 97,049 | 711,557 | 98,222 | 454,565 | 37,892 | |
| of which: POR markets (utility remittance) | 230,740 | 142,377 | 256,072 | 193,488 | 306,200 | 74,287 | 268,463 | 40,325 | 53,959 | 395,625 | 54,612 | 252,738 | 21,068 | |
| of which: Non-POR markets (direct billed) | 184,260 | 113,697 | 204,489 | 154,512 | 244,519 | 59,323 | 214,384 | 32,202 | 43,090 | 315,931 | 43,611 | 201,827 | 16,824 | |
| Other receipts / asset recoveries | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| **TOTAL CASH RECEIPTS** | **415,000** | **256,074** | **460,562** | **348,000** | **550,719** | **133,610** | **482,848** | **72,527** | **97,049** | **711,557** | **98,222** | **454,565** | **37,892** | |
| **OPERATING DISBURSEMENTS — COST OF SUPPLY** | | | | | | | | | | | | | | |
| Power supply — NYISO | 160,000 | 150,000 | 150,000 | 177,457 | 177,457 | 177,457 | 137,457 | 171,200 | 137,457 | 137,457 | 137,457 | 137,457 | 137,457 | |
| Power supply — ISO-NE | 100,000 | 83,490 | 83,490 | 3,503 | 3,503 | 3,503 | 3,503 | 1,501 | - | - | - | - | - | |
| Gas supply — Axpo US | - | - | - | - | 145,000 | - | | - | - | 107,000 | | - | - | |
| Pipeline capacity & transport | - | - | - | 65,812 | 18,091 | 61,376 | - | - | - | - | - | - | - | |
| Vertex One | 15,631 | | | | | | | | | | | | | |
| RECs / ZECs — NYSERDA | - | - | 41,402 | 44,141 | - | - | - | 44,141 | - | - | - | - | 42,656 | |
| RECs — Massachusetts | - | - | 99,050 | 15,025 | - | - | - | - | - | - | - | - | - | |
| Pipeline demand charge top-up | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| **Total Cost of Supply** | **275,631** | **233,490** | **373,942** | **305,939** | **344,051** | **242,337** | **140,961** | **216,842** | **137,457** | **244,457** | **137,457** | **137,457** | **180,113** | |
| **OPERATING DISBURSEMENTS — PAYROLL, SG&A AND TAXES** | | | | | | | | | | | | | | |
| Payroll, taxes & benefits | 17,791 | 17,791 | 17,791 | 17,791 | 17,791 | 17,791 | 17,791 | 17,791 | 17,791 | 17,791 | 17,791 | 17,791 | 17,791 | [1] |
| Broker commissions | - | - | - | 35,940 | - | - | 47,920 | - | - | - | - | 59,900 | - | |
| Rent, insurance & surety bonds | - | - | 7,000 | - | - | - | 7,000 | - | - | - | - | 7,000 | - | |
| Other G&A (EDI, software, bank, cust. svc) | - | - | - | - | 33,980 | - | - | - | - | 33,980 | - | - | - | |
| Ordinary-course professionals | - | - | - | 12,500 | - | 6,510 | 8,680 | - | - | - | - | 10,850 | - | |
| Sales tax, GRT & other tax remittance | - | - | - | - | 57,000 | - | - | - | - | 66,105 | - | - | - | |
| | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| **Total Payroll, SG&A and Taxes** | **17,791** | **17,791** | **24,791** | **66,231** | **108,771** | **24,301** | **81,391** | **17,791** | **17,791** | **117,876** | **17,791** | **95,541** | **17,791** | |
| **RESTRUCTURING & ADMINISTRATIVE DISBURSEMENTS ( ESTIMATED )** | | | | | | | | | | | | | | |
| Debtors' counsel | - | - | - | 15,000 | - | - | - | 15,000 | - | - | - | 15,000 | - | |
| Chief Restructuring Officer | - | - | - | 7,500 | - | - | - | - | - | - | - | - | - | |
| US Trustee quarterly fees | - | - | - | - | - | 19,800 | - | - | - | - | - | - | - | |
| Utility adequate assurance deposits | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| First-day order / critical vendor payments | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| **Total Restructuring & Administrative** | **-** | **-** | **-** | **22,500** | **-** | **19,800** | **-** | **15,000** | **-** | **-** | **-** | **15,000** | **-** | |
| **TOTAL CASH DISBURSEMENTS** | **293,422** | **251,281** | **398,733** | **394,670** | **452,822** | **286,438** | **222,352** | **249,633** | **155,248** | **362,333** | **155,248** | **247,998** | **197,904** | |
| **Weekly Change in Cash** | **121,578** | **4,793** | **61,829** | **(46,670)** | **97,897** | **(152,828)** | **260,496** | **(177,106)** | **(58,200)** | **349,223** | **(57,026)** | **206,567** | **(160,012)** | |
| **CASH POSITION — CLOSING** | | | | | | | | | | | | | | |
| **CLOSING CASH** | **570,604** | **575,397** | **637,226** | **590,556** | **688,453** | **535,625** | **796,121** | **619,016** | **560,816** | **910,039** | **76,974** | **283,541** | **123,528** | |

## NOTES, SOURCES AND ASSUMPTION BASIS

| | | |
|---|---|---|
| [1] | **Payroll, taxes & benefits** | The CEO has voluntarily agreed to a significant reduction in his annual salary, down to $60,000. |