REED SMITH LLP
Andrew L. Buck
599 Lexington Avenue
New York, New York 10022
Telephone: 212.521.5400
Fax: 212.521.5450
Email: abuck@reedsmith.com

and

Paul D. Moak (*Admitted Pro Hac Vice*)
221 McKinney Street, Suite 2100
Houston, TX 77010
Telephone: 713.469.3800
Fax: 713.469.3800
Email: pmoak@reedsmith.com

*Attorneys for Axpo U.S. LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>NEP HOLDINGS, INC.,<br><br>Debtor.[1] | **Chapter 11**<br><br>**Case No.: 26-11988 (DSJ)** |
| In re:<br><br>NORTHEASTERN POWER AND GAS, LLC,<br><br>Debtor. | **Chapter 11**<br><br>**Case No.: 26-11989 (DSJ)** |
| In re:<br><br>MAVEN ENERGY, LLC,<br><br>Debtor. | **Chapter 11**<br><br>**Case No.: 26-11990 (DSJ)** |

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: NEP Holdings Inc. (2807), Case No. 26-11988 (DSJ); Northeastern Power and Gas, LLC (3206), Case No. 26-11989 (DSJ); and Maven Energy, LLC (7779), Case No. 26-11990 (DSJ). The Debtors' principal place of business is 260 Madison Avenue, 8th Floor, New York, New York 10016.

**LIMITED OBJECTION AND RESRVATION OF RIGHTS OF AXPO U.S. LLC TO ENTRY OF FINAL ORDER (I) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) AUTHORIZING AND DIRECTING THE PREPETITION SECURED PARTY TO FACILITATE THE DEBTORS' USE OF CASH COLLATERAL, (IV) AUTHORIZING PAYMENT OF PREPETITION WAGES AND RELATED OBLIGATIONS, AND (V) SCHEDULING A FINAL HEARING**

Axpo U.S. LLC ("Axpo"), by and through its undersigned counsel, hereby submits this limited objection and reservation of rights (this "Objection") to the motion of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for a final order authorizing the Debtors' Use of Cash Collateral, (ii) Granting Adequate Protection, (iii) Authorizing and Directing the Prepetition Secured Party to Facilitate the Debtors' Use of Cash Collateral, (iv) Authorizing Payment of Prepetition Wages and Related Obligations, and (v) Scheduling a Final Hearing entry of a Final Order [ECF No. 5[2]] (the "Cash Collateral Motion"). In support thereof, Axpo states as follows:

**LIMITED OBJECTION**

1. Axpo is the largest creditor of the Debtors by a wide margin, holding a claim in excess of $6.5 million secured by substantially all of the Debtors' assets. Throughout these cases, Axpo has been, and remains, supportive of the Debtors' continued operations, and has worked closely with the Debtors to provide interim use of its Cash Collateral in accordance with the terms of a consensual budget, as evidenced by its agreement to the terms of the Court's order granting the Cash Collateral Motion on an interim basis [ECF No. 18[3]] (the "Interim Order").

2. Axpo remains willing to consent to the Debtors' continued use of its Cash Collateral for a further limited interim period; *provided*, *however*, that such consent is expressly conditioned

[2] Capitalized terms used herein but otherwise undefined have the meaning provided in the Interim Order.
[3] Although the Debtors moved for jointly administration of these cases, the Court has not yet granted that relief. For the Court's convenience, ECF references herein refer to the docket of NEP Holdings Inc., Case No. 26-11988 (DSJ).

upon: (a) the Debtors' use of Cash Collateral being strictly limited to their actual, necessary business expenses and core operational necessities; (b) such use being limited in both scope and duration; and (c) the Debtors' demonstrable commitment to progress expeditiously towards a meaningful resolution of these cases through a recapitalization or a sale process.

3. Throughout these cases, Axpo has worked closely with the Debtors to monitor and facilitate their use of Cash Collateral in accordance with the approved Interim Budget as they have stabilized their operations in the early stages of their bankruptcy. However, Axpo is concerned that, given anticipated higher energy demands and the risk of high prices during the coming winter months, coupled with the Debtors' extremely thin capitalization reflected in the Interim Budget, the Debtors' cash flow will be insufficient to maintain operations over the longer term. It is therefore imperative that the Debtors commit to move with all deliberate speed immediately to achieve a definitive resolution of these cases. Axpo believes that the most expeditious route to that resolution is a sale to the only prospective purchaser on an expedited basis.

4. Notwithstanding the exigencies of the Debtors' financial position, Axpo is concerned that the Debtors' leadership fails to appreciate the Debtors' precarious financial condition or the urgent need to advance the sale process available to them today. In particular, despite Axpo's continual urging that the Debtors provide updated budgets, the Debtors have consistently failed to deliver budgets timely, often neglecting to respond to Axpo's reasonable inquiries for days. More significantly, the Debtors' budgets universally fail to include necessary (and sometimes critical) expenditures, resulting in repeated "emergency" funding requests. These cases have been fraught with self-created emergencies, from the purported need to pay the prepetition commissions of brokers on less than 24 hours' notice to the more recent last-minute request, just yesterday, that Axpo immediately release over $18,000 for an unbudgeted healthcare

bill. While Axpo has to date been able and willing to accommodate these "surprise" expenses, Axpo should not be forced to countenance such a haphazard approach that jeopardizes their Cash Collateral and the viability of these cases. While Axpo appreciates the demands imposed on the Debtors' management by the bankruptcy filing, the Debtors' failure to understand and timely address their near-term cash flows reflects not only a misapprehension of their business operations, but it also casts significant doubt on their longer-term cash forecasts, raising concerns about the Debtors' ability to fund an extended sale process. Indeed, Axpo believes there is a significant risk that the Debtors could be in a cash-negative position as early as next week.

5. Accordingly, the facts here support an expedited sale process without the need for a lengthy and costly marketing period which, as demonstrated by the Interim Budget, the Debtors can ill afford. Axpo understands that, since at least February 2026, the Debtors have sought to identify potential purchasers of, or investors in, their businesses through a coordinated marketing campaign. Importantly, that eight-month process has yielded only one viable purchaser. Axpo therefore submits that the only viable path to the Debtors' successful emergence from bankruptcy is to move forward with that purchaser without further delay, and Axpo stands ready to work with the Debtors to facilitate that process.

6. Accordingly, Axpo will consent to the continued use of Cash Collateral on three conditions: *first*, the continued use of Cash Collateral shall be in accordance with the terms of the Interim Budget, as may be revised in consultation between Axpo and the Debtors;[4] *second*, such consent is limited to an interim period ending October 2, 2026 (the "Second Interim Period"), with

---

[4] As noted above, Axpo continues to collaborate in good faith with the Debtors to refine the Interim Budget, including without limitation to require the inclusion of more detailed descriptions of the expenses included in the "Ordinary Course Professionals" line item, and reserves all rights related to the form and substance of the Interim Budget. Specifically, Axpo has requested that the Debtors identify their Ordinary Course Professionals and allocate anticipated expenses by professional but has not yet received those clarifications.

a continued hearing on the use of Cash Collateral to be scheduled early the week of October 5, subject to the Court's availability; and *third*, the use of Cash Collateral during the Second Interim Period shall be conditioned upon the Debtors' affirmative commitment to move forward expeditiously with a sale of all or substantially all of the Debtors' assets to a third party purchaser, with a motion to approve such sale (the "Sale Motion") to be filed on or before the expiration of the Second Interim Period, unless otherwise agreed by Axpo in its sole discretion.

7. Absent each of the foregoing protections being incorporated into any order authorizing further use of Cash Collateral, and notwithstanding the protections provided for in the Interim Order, Axpo submits that it will not be adequately protected and accordingly will not consent to any further use of Cash Collateral beyond the terms of the Interim Order.

## RESERVATION OF RIGHTS

8. Axpo reserves all rights to supplement or otherwise adopt additional arguments in connection with this Objection in advance of or at the Final Hearing, and Axpo further reserves any and all rights, remedies and objections regarding (i) final approval of revisions to the Interim Budget or any other budget for the use of Cash Collateral proposed by the Debtors, (ii) the terms of any bidding procedures motion, sale motion, or similar motion regarding the sale of all or substantially all of the Debtors' assets, and (iii) any other issues arising in these cases.

[*Remainder of Page intentionally Left Blank*]

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, Axpo objects to the Debtors' use of Cash Collateral on a final basis as and respectfully request that any order further authorizing Debtors' use of Cash Collateral be conditioned upon the inclusion of the protections requested by Axpo in this Objection.

Dated: September 11, 2026
New York, New York

Respectfully Submitted,

**REED SMITH LLP**

By: /s/ Andrew L. Buck

Andrew L. Buck
599 Lexington Avenue
New York, New York 10022
Telephone: 212.521.5400
Fax: 212.521.5450
Email: abuck@reedsmith.com

- *and* -

Paul D. Moak (*Admitted Pro Hac Vice*)
221 McKinney Street, Suite 2100
Houston, TX 77010
Telephone: 713.469.3800
Fax: 713.469.3800
Email: pmoak@reedsmith.com

*Attorneys for Axpo U.S. LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of September, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CMF/ECF system, which sent notification to all parties of interest participating in the CMF/ECF system.

*/s/ Andrew L. Buck, Esq.*
Andrew L. Buck, Esq.