UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ----------------------------------------------------------X | |
| In re: | Chapter 11 |
| NEP HOLDINGS INC., et al.,[1]<br>Debtors. | Case No. 26-11988 (DSJ)<br>(Jointly Administered) |
| ----------------------------------------------------------X | |

**DECLARATION OF PERRY WILSON PURSUANT TO**
**RULE 1007-2 OF THE LOCAL BANKRUPTCY RULES OF THE SDNY**

Perry Wilson, declares under the penalty of perjury pursuant to the provisions of 28 U.S.C. § 1746 that the following statements are true and correct:

1. I am the President and CEO of NEP HOLDINGS INC. ("NEP"), NORTHEASTERN POWER AND GAS, LLC ("NEPG"), and MAVEN ENERGY, LLC ("Maven") (collectively, the "Debtors").

2. I submit this declaration (the "Declaration") pursuant to Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") in support of the Debtor's petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), filed on August 19, 2026 (the "Petition Date").

3. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by professionals retained by the Debtors and my opinion based upon experience, knowledge, and information concerning the operations of the Debtors and their industry as a whole. I am

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: NEP Holdings Inc. (2807), Case No. 26-11988 (DSJ); Northeastern Power and Gas, LLC (3206), Case No. 26-11989 (DSJ); and Maven Energy, LLC (7779), Case No. 26-11990 (DSJ) The Debtors' principal place of business is 260 Madison Avenue, 8th Floor, New York, New York 10016.

authorized to submit this Declaration on behalf of the Debtors. Unless otherwise indicated, the financial information contained in this Declaration is unaudited.

**The Debtors' Business and Circumstances Leading to Chapter 11 Filing**

4. NEP was formed on January 10, 2025 as a corporation under the laws of the State of New York. NEP is the holding company of NEPG and Maven. It owns all of the equity in these entities. Perry Wilson owns all of the shares of NEP.

5. NEPG was formed on December 31, 2020 as a limited liability company under the laws of the State of New York. NEPG is a National Minority Supplier Development Council (NMSDC) Certified Minority Business Enterprise (MBE). NEPG was the first 100% African American owned energy supplier in New York.

6. Maven was formed on May 12 2021 as a limited liability company under the laws of the State of Delaware. Perry Wilson purchased Maven in 2024 and thereafter transferred ownership to NEP.

7. The Debtors are retail energy service companies providing clean energy services and solutions to residential, commercial and industrial customers in New York, New Jersey and Massachusetts markets. They purchase electricity and natural gas at wholesale and resell it to retail customers under supply contracts. They do not own power plants, transmission or distribution assets. "Northeastern Power" was nominated in 2026 as the 2025 Retail Supplier of the Year by the Energy Marketing Conferences.

8. The Debtors employ 8 employees on a w2 basis. Substantially all of the Debtors' customer origination and renewal activity is performed by approximately twenty-two independent brokers and sales agents who are employed on a 1099 basis.

## Circumstances Leading to These Chapter 11 Cases

9. The Debtors entered these Chapter 11 Cases notwithstanding substantial growth in their underlying business. The Debtors' annual revenues increased from approximately $11.7 million in 2024 to approximately $19.5 million in 2025. The Debtors believe that the circumstances precipitating these filings resulted principally from liquidity constraints and the Debtors' deteriorating relationship with Axpo U.S. LLC ("Axpo"), which evolved from a commodity counterparty into the Debtors' senior secured creditor with substantial control over the Debtors' liquidity and operations.

10. Axpo's relationship with the Debtors predates the financing arrangement that ultimately gave Axpo its present secured position. Axpo initially supplied natural gas to NEPG pursuant to an ISDA relationship beginning on January 14, 2025. On or about December 23, 2025, Axpo, the Debtors and the Debtors' then-existing lender, Capital Foundry Lending, LLC ("Capital Foundry"), entered into an intercreditor arrangement. During this period, the Debtors relied upon the ability to hedge their commodity exposure as an important component of managing the risks inherent in the retail energy business.

11. According to the Debtors' records and management's recollection, Axpo restricted or declined certain hedging transactions during a period of significant volatility in the natural gas markets. The Debtors believe that the inability to implement the requested hedges materially increased their exposure to natural gas prices and contributed to substantial obligations subsequently owed to Axpo. The Debtors further believe that, had they been permitted to implement an appropriate hedging strategy, a substantial portion of the losses that ultimately impaired their liquidity could have been avoided. The Debtors are continuing to review the relevant

trading records and communications concerning these matters and expressly reserve all rights with respect thereto.

12. On or about May 11, 2026, Axpo, NEPG, Maven and NEP entered into an Energy Supply Agreement and related transaction and security documents (collectively, the "ESA"). As part of that transaction, Axpo effectively replaced Capital Foundry in the senior secured position and obtained first-priority security interests in substantially all of the Debtors' assets as well as pledged equity interests from NEP. The transaction also involved funding from Axpo that was substantially utilized to satisfy obligations to Capital Foundry. Thus, although the Debtors could not simultaneously make the required Capital Foundry repayments and pay Axpo's monthly supply invoices, a Termination and Release Agreement among the parties to the ESA and Capital Foundry provided for deferral of those invoices. A subsequent prepaid energy transaction of approximately $1 million was separate from the $1.5 million May 11 payment. I recall that Axpo instructed us to use most of the prepayment proceeds to pay Capital Foundry, whose remaining obligations were supported by the Axpo parent guaranty. Accordingly, these transactions did not provide an equivalent amount of unrestricted operating liquidity. Although the ESA provided for an ongoing commodity supply relationship, it also functioned in significant respects as a restructuring of the Debtors' existing secured financing arrangements.

13. The circumstances surrounding the Debtors' subsequent alleged default under the ESA are the subject of continuing review. Among other things, shortly before Axpo declared a Borrowing Base deficiency, Borrowing Base reports submitted by the Debtors reflected positive availability. A June 9, 2026 report, for example, reflected approximately $534,000 of positive availability. Two days later, Axpo calculated a Borrowing Base deficiency of approximately $1.147 million. Axpo's calculation included approximately $1.025 million attributable to a prepaid

energy transaction that had not been separately included in the Debtors' prior Borrowing Base reports and also utilized a lower credit component in determining availability. Axpo thereafter declared an Event of Default when the asserted deficiency was not cured within the required period.

14. Following the asserted Event of Default and perhaps even prior to that date, Axpo exercised substantial control over the Debtors' liquidity. Beginning on or about June 17, 2026, Axpo asserted the right to control the application and distribution of revenues deposited into the Debtors' lockbox accounts. As a practical matter, this materially limited management's ability to determine how operating revenues would be deployed to meet the Debtors' ongoing obligations. The Debtors are reviewing the operation of the lockbox during this period, including whether funds swept or controlled by Axpo included amounts collected from customers on account of sales taxes that were required to be remitted to taxing authorities and potentially constituted trust funds rather than property available for repayment of Axpo's obligations.

15. At the same time that Axpo exercised increasing control over the Debtors' liquidity, it proposed that the Debtors address the asserted defaults through, among other things, a substantial equity infusion or a disposition of all or a portion of the Debtors' retail customer book. Axpo subsequently threatened to exercise its remedies against the pledged equity interests if an acceptable repayment arrangement was not reached. These developments created an immediate threat to the Debtors' continued ownership and control of their operating businesses.

16. The Debtors believe that these events should be considered in the context of an otherwise growing operating business. Management believes that, if Axpo had acted principally in the manner of a conventional secured lender seeking repayment while permitting the Debtors reasonable latitude to manage commodity risk and operating liquidity, rather than exercising the

degree of operational and financial control described above and pursuing transactions that could have resulted in a change of control of the Debtors, the Debtors may have been able to address their liquidity issues outside of bankruptcy. In particular, management believes that the ability to hedge commodity exposure and to deploy operating revenues to satisfy taxes and other ordinary-course obligations could have materially altered the circumstances that ultimately necessitated these filings.

17. The Debtors are continuing to investigate the parties' respective rights and obligations under the ESA and related agreements, Axpo's administration of the Borrowing Base and lockbox arrangements, the circumstances surrounding the Debtors' commodity hedging activities, and the disposition of funds collected on account of sales taxes. Nothing in this Declaration is intended to constitute a final determination concerning any claims or defenses that may exist between the Debtors and Axpo, and the Debtors expressly reserve all rights, claims, defenses and causes of action with respect to these matters.

18. Prior to the Petition Date, the Debtors attempted to resolve their disputes with Axpo consensually. Those efforts did not result in a resolution sufficient to eliminate the immediate threat to the Debtors' operations and ownership. The Debtors therefore commenced these Chapter 11 Cases to preserve their businesses as going concerns, stabilize their operations and liquidity, protect the value of their customer relationships and other assets, investigate and resolve the issues described above, and provide the Debtors with the breathing room necessary to formulate a plan that maximizes value for creditors and other stakeholders.

**Response Pursuant to LBR 1007-2**

The Debtors respond to the itemized information in LBR 1007-2 as follows:

A. Contents of Declaration:

(1) the nature of the debtor's business and a concise statement of the circumstances leading to the debtor's filing under chapter 11;

**SEE ABOVE.**

(2) if the case originally was commenced under chapter 7 or chapter 13, the name and address of any trustee appointed in the case and, in a case originally commenced under chapter 7, the names and addresses of the members of any creditors' committee;

**Not applicable.**

(3) the names and addresses of the members of, and attorneys for, any committee organized prior to the order for relief in the chapter 11 case, and a brief description of the circumstances surrounding the formation of the committee and the date of its formation;

**No committee has been appointed.**

(4) the following information with respect to each of the holders of the twenty (20) largest unsecured claims, excluding insiders: the name, the address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), the telephone number, e-mail address, the name(s) of person(s) familiar with the debtor's account, the amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed or partially secured;

**A list of the 20 largest unsecured creditors in each case is annexed hereto as Exhibit A.**

(5) the following information with respect to each of the holders of the five (5) largest secured claims: the name, the address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), the amount of the claim, a brief description and an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed;

**Axpo asserts a secured claim against the Debtors. It has filed UCC financing statements against Maven and NEPG for "All assets and personal property of Debtor, wherever located, whether now owned or existing or hereafter acquired or arising, including all products and proceeds of the foregoing." No such financing statement was located as to NEP. The Claim is disputed and is listed as such. Also, a large portion of the claim appears to consist of $1.8 million in deposits and letters of**

**credit. The Debtors may have an offset right for monies owed from Axpo and the Debtors are investigating all claims and defenses in connection with the Axpo claim and reserve all rights, remedies, claims and defenses in connection therewith.**

**The other holders of secured claims against the Debtors appear to be mostly if not entirely comprised of ISO entities whose secured claims are believed to be contingent subject to the Debtors' continued investigation of the liens against their assets and estates. Some or all of the entities have filed UCC financing agreements ranging from 2021-2025. These liens are under investigation by the Debtors.**

(6) summary of the Debtor's assets and liabilities;

**A summary schedule of the Debtor's assets and liabilities was filed with the petition (Official Form 206Sum) and amended by subsequent amended filings.**

(7) the number and classes of shares of stock, debentures or other securities of the debtor that are publicly held, and the number of holders thereof, listing separately those held by each of the debtor's officers and directors and the amounts so held;

**No shares are publicly held. NEP owns the interests in NEPG and Maven and Perry Wilson owns 100% of the equity of NEP.**

(8) a list of all of the debtor's property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity, giving the name, address, and telephone number of each such entity and the court in which any proceeding relating thereto is pending;

**The Debtors maintain certain lockbox accounts over which Axpo has asserted control rights.**

(9) a list of the premises owned, leased or held under other arrangement from which the debtor operates its business;

**The Debtors lease office space at the following locations:**

**260 Madison Ave, 8th Floor, New York, NY 10016 and**

**625 W57th St NY NY 10019**

(10) the location of the debtor's substantial assets, the location of its books and records, and the nature, location and value of any assets held by the debtor outside the territorial limits of the United States;

**The Debtors' books and records are located in New York. Physical assets are located in New York. Debtors have disclosed in detail its substantial assets in the schedules filed with the Court.**

**There are no assets held outside of the United States.**

(11) the nature and present status of each action or proceeding, pending or threatened, against the debtor or its property where a judgment against the debtor or a seizure of its property may be imminent; and

**On the Petition Date, the following action(s) were pending:**

**Axpo's August 12, 2026 notice threatened enforcement of remedies, expressly including foreclosure on NEP's pledged equity interests, if a repayment plan was not communicated by August 19, 2026.**

(12) the names of the individuals who comprise the debtor's existing senior management, their tenure with the debtor, and a brief summary of their relevant responsibilities and experience.

**Perry Wilson is the President and CEO of the Debtors.**

Mr. Wilson has 15 years of cross-functional experience in wholesale and retail markets who has managed trading, pricing, risk, product development, asset management, acquisitions, marketing and forecasting. He has robust and working knowledge of all U.S. gas and power markets with a broad range of deep functional disciplines in IT and automation. Mr. Wilson holds a degree from Clark Atlanta University, where he majored in Business administration with a concentration in marketing, and an M.S in energy Management in the school of engineering from New York Institute of Technology. Employment history: He has held senior positions for several energy companies including East Coast Power and Gas, Indra Energy and Columbia Utilities. Mr. Wilson chairs the Energy and Transportation for NY/NJ where he connects MBEs with corporate sponsors and supports them. He is also on the board of GCSA (governors committee of scholastic achievement) and mentor.

(B) Additional Information. The Debtor intends to continue its business but reserves its rights to sell any or all of its assets and is seeking to maximize its value for the benefit of the estate, creditors and all parties in interest. In furtherance of the Debtor's operations, please be advised as follows:

(1) the estimated amount of the weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the filing of the chapter 11 petition;

**The Debtor has 8 employees. Payroll and Benefits in the 30 days after the Petition Date was approximately $99,500.**

(2) the amount paid and proposed to be paid for services for the thirty (30) day period following the filing of the chapter 11 petition –

(i) if the debtor is a corporation, to officers, stockholders and directors;

**The Debtor paid Perry Wilson $4615 in the 30 days after the Petition Date.**

(ii) if the debtor is an individual or a partnership, to the individual or the members of the partnership; and

**N/A**

(iii) if a financial or business consultant has been retained by the debtor, to the consultant; and

**Subject to Court approval, the Debtor has retained Spence Law Office P.C., Steamer Hart LLP and TFG Related Entities - Fuoco Group ("TFG"), Certified Public Accountants & Business Advisors. The Debtor paid TFG $32,500.**

(C) a schedule, for the thirty (30) day period following the filing of the chapter 11 petition, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing.

**The Debtor submitted a budget in this case which was approved and is annexed to the Second Interim Order Authorizing Use of Cash Collateral (ECF No. 35) detailing the Debtors' estimated cash receipts and disbursements for the 30-day period following the Petition Date.**

Dated: October 13, 2026

______________________________
Perry Wilson
President and CEO of the Debtor Entities

**EXHIBIT A**

**Fill in this information to identify the case:**

Debtor name: NEP Holdings, Inc.

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK

Case number (if known): 26-11988-DSJ

☒ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

**12/15**

**A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.**

| **Name of creditor and complete mailing address, including zip code** | **Name, telephone number and email address of creditor contact** | **Nature of claim** (for example, trade debts, bank loans, professional services, and government contracts) | **Indicate if claim is contingent, unliquidated, or disputed** | **Amount of claim** If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | **Total claim, if partially secured** | **Deduction for value of collateral or setoff** | **Unsecured claim** |
| Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA 19114 | | | | | | Unknown |
| MASSACHUSETTS DEPARTMENT OF REVENUE<br>BANKRUPTCY UNIT<br>P.O. BOX 7090<br>Boston, MA 02204 | | | | | | Unknown |
| NYC Department of Finance<br>Office of Legal Affairs<br>375 Pearl Street, 30th Floor<br>New York, NY 10038 | | | | | | Unknown |
| NYS Dept of Tax and Finance<br>Bankruptcy Section<br>PO Box 5300<br>Albany, NY 12205-0300 | | | | | | Unknown |
| Steamer Hart LLP<br>46 Trinity Place, 3rd FL<br>New York, NY 10006 | | Attorneys fees | | | | $3,150.00 |
| TFG Related Entities - Fuoco Group<br>200 Parkway Drive South, Suite 302<br>Hauppauge, NY 11788 | | Accounting Services | | | | $16,900.00 |



Software Copyright (c) 1996-2026 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Fill in this information to identify the case:

Debtor name Northeastern Power and Gas, LLC

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK

Case number (if known): 26-11989-DSJ

☒ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

**A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.**

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| AEC<br>1 Metrotech Center North<br>Suite 301<br>Brooklyn, NY 11201 | | | | | | $18,997.32 |
| American Express National Bank<br>c/o Zwicker and Associates, P.C.<br>P.O. Box 9043<br>Andover, MA 01810-1041 | | | | | | $27,581.99 |
| Bank of America<br>100 North Tryon St.<br>Charlotte, NC 28255 | | | | | | $27,680.00 |
| Bank of America<br>100 North Tryon St.<br>Charlotte, NC 28255 | | | | | | $21,788.00 |
| Box Online<br>447 Sutter St, Suite 405<br>PMB 1116<br>San Francisco, CA 94108 | | | | | | $9,840.60 |
| Cobra Energy<br>65 Margaret Avenue<br>Lawrence, NY 11559 | | | | | | $35,826.19 |
| ECEG<br>70 Lambert Avenue<br>Copiague, NY 11726 | | | | | | $44,424.09 |
| escoADVISOR LLC<br>14 Berry Ct<br>Flanders, NJ 07836 | | | | | | $24,040.00 |



Software Copyright (c) 1996-2026 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Debtor Northeastern Power and Gas, LLC
Name

Case number *(if known)* 26-11989-DSJ

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| JPMorgan Chase Bank, N.A.<br>s/b/m/t Chase Bank USA, N.A.<br>c/o National Bankruptcy Services, LLC<br>P.O. Box 9013<br>Addison, TX 75001 | | | | | | $12,558.87 |
| Maureen Prainito<br>260 Madison Ave 8fl<br>New York, NY 10016 | | | | | | $80,871.34 |
| Metro Refunds<br>505 Chestnut St<br>Cedarhurst, NY 11516 | | | | | | $35,101.81 |
| MPN Capital<br>867 Boylston Street<br>5th Floor #1821<br>Boston, MA 02116 | | | | | | $9,075.53 |
| NACS Carmine Nuzzi<br>500 Purdy Hill Road<br>Suite 4<br>Monroe, CT 06468 | | | | | | $7,837.35 |
| NECS<br>1274-49th Street<br>Suite 194<br>Brooklyn, NY 11219 | | | | | | $17,056.64 |
| NYS Dept of Tax and Finance<br>Bankruptcy Section<br>PO Box 5300<br>Albany, NY 12205-0300 | | Sales Tax | | | | $966,268.00 |
| Platinum Energy/Matt Lanfear<br>3526 South Creek Road<br>Hamburg, NY 14075 | | | Contingent<br>Unliquidated<br>Disputed | | | $21,513.12 |
| Softsmiths<br>10692 Haddington Dr, Ste 200<br>Houston, TX 77043 | | | | | | $55,551.00 |
| Steve Centineo<br>260 Madison Ave 8fl<br>New York, NY 10016 | | | | | | $24,195.93 |
| Vertex One<br>1321 Upland Drive<br>Suite 8389<br>Houston, TX 77043 | | | | | | $42,152.00 |
| WebFX<br>1705 N Front Street<br>Harrisburg, PA 17102 | | | | | | $28,329.00 |



Software Copyright (c) 1996-2026 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Fill in this information to identify the case:

Debtor name: Maven Energy, LLC

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK

Case number (if known): 26-11990-DSJ

☒ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

**A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.**

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Balch & Bingham<br>1901 Sixth Avenue North, Suite 1500<br>Birmingham, AL 35203-4642 | | Attorneys fees | | | | $1,477.00 |
| Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA 19114 | | | | | | Unknown |
| MASSACHUSETTS DEPARTMENT OF REVENUE<br>BANKRUPTCY UNIT<br>P.O. BOX 7090<br>Boston, MA 02204 | | | | | | Unknown |
| NE ISO<br>c/o Eric S. Goldstein, Esq.<br>Shipman & Goodwin LLP<br>One Constitution Plaza<br>Hartford, CT 06103 | | Financing statement not available or not located at time of filing. | Contingent | Unknown | $0.00 | $0.00 |
| NYS Dept of Tax and Finance<br>Bankruptcy Section<br>PO Box 5300<br>Albany, NY 12205-0300 | | | | | | Unknown |
| Vertex One<br>1321 Upland Drive<br>Suite 8389<br>Houston, TX 77043 | | | | | | $29,252.94 |



Software Copyright (c) 1996-2026 Best Case, LLC - www.bestcase.com Best Case Bankruptcy