REED SMITH LLP
Andrew L. Buck
599 Lexington Avenue
New York, New York 10022
Telephone: 212.521.5400
Fax: 212.521.5450
Email: abuck@reedsmith.com

and

Paul D. Moak (*Admitted Pro Hac Vice*)
221 McKinney Street, Suite 2100
Houston, TX 77010
Telephone: 713.469.3800
Fax: 713.469.3800
Email: pmoak@reedsmith.com

*Attorneys for Axpo U.S. LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>NEP HOLDINGS, INC., *et al.*,<br><br>Debtor.[1] | **Chapter 11**<br><br>**Case No.: 26-11988 (DSJ)**<br><br>(Jointly Administered) |

**THIIRD LIMITED OBJECTION AND RESRVATION OF RIGHTS OF AXPO U.S. LLC TO ENTRY OF FINAL ORDER (I) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) AUTHORIZING AND DIRECTING THE PREPETITION SECURED PARTY TO FACILITATE THE DEBTORS' USE OF CASH COLLATERAL, (IV) AUTHORIZING PAYMENT OF PREPETITION WAGES AND RELATED OBLIGATIONS, AND (V) SCHEDULING A FINAL HEARING**

Axpo U.S. LLC ("Axpo"), by and through its undersigned counsel, hereby submits this third limited objection and reservation of rights (this "Objection") to the motion of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for a final order

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: NEP Holdings Inc. (2807), Case No. 26-11988 (DSJ); Northeastern Power and Gas, LLC (3206), Case No. 26-11989 (DSJ); and Maven Energy, LLC (7779), Case No. 26-11990 (DSJ). The Debtors' principal place of business is 260 Madison Avenue, 8th Floor, New York, New York 10016.

authorizing the Debtors' Use of Cash Collateral, (ii) Granting Adequate Protection, (iii) Authorizing and Directing the Prepetition Secured Party to Facilitate the Debtors' Use of Cash Collateral, (iv) Authorizing Payment of Prepetition Wages and Related Obligations, and (v) Scheduling a Final Hearing entry of a Final Order [ECF No. 5] (the "Cash Collateral Motion"). In support thereof, Axpo states as follows:

**LIMITED OBJECTION**

1. Axpo is the Debtors' largest creditor by a wide margin, holding a claim in excess of $6.5 million secured by substantially all of the Debtors' assets. Throughout these cases, Axpo has been, and remains, supportive of the Debtors' continued operations, and has worked closely with the Debtors to provide interim use of its Cash Collateral in accordance with the terms of a consensual budget, as evidenced by its agreement to the terms of the Court's orders granting the Cash Collateral Motion on an initial interim basis [ECF Nos. 18, 30, 35] (together, the "Interim Orders").[2]

2. As described in its prior Limited Objections and Reservations of Rights with respect to the use of its cash collateral [ECF Nos. 28, 33] (the "Prior Objections"),[3] and reiterated at the hearings on the continued interim use of Cash Collateral on September 15, 2026 and October 5, 2026, Axpo indicated its willingness to consent to the Debtors' continued use of its Cash Collateral on an interim basis subject to the following express conditions: (a) the Debtors' use of Cash Collateral being strictly limited to their actual, necessary business expenses and core operational necessities; (b) such use being limited in both scope and duration; and (c) the Debtors' demonstrable commitment to progress expeditiously towards a meaningful resolution of these cases through a recapitalization or a sale process.

[2] Capitalized terms used herein but otherwise undefined have the meaning provided in the Interim Orders.
[3] The Prior Objections are hereby incorporated as if set forth at length herein.

3. Despite its close working relationship with Debtors' management, Axpo remains concerned that leadership fails to appreciate the Debtors' precarious financial condition or the urgent need to advance the sale process available to them today. As Axpo has previously informed the Court, the Debtors have consistently failed to timely deliver budgets, often neglecting to respond to Axpo's reasonable inquiries for days. Prior to entry to the Third Interim Cash Collateral Order, the Debtors' budgets universally failed to include necessary (and sometimes critical) expenditures, resulting in repeated "emergency" funding requests. While Axpo appreciates the demands imposed on the Debtors' management by the bankruptcy filing, the Debtors' failure to understand and timely address their near-term cash flows reflects not only a misapprehension of their business operations, but it also casts significant doubt on their longer-term cash forecasts, raising concerns about the Debtors' ability to fund an extended sale process.

4. As the Court is aware, the Debtors engaged replacement bankruptcy counsel immediately prior to the last hearing regarding their use of Cash Collateral. In the last several weeks, that counsel has been working to correct the many procedural deficiencies in these cases, including filing the notice of filing, schedules and statements of financial affairs, and the Declaration of Perry Wilson pursuant to Local Bankruptcy Rule 1007-2 (the "Wilson Declaration").

5. Although it is not directly relevant to the Debtors' request for the continued use of Axpo's Cash Collateral, Axpo believes it is important to advise the Court that it disputes numerous misstatements in the Wilson Declaration that attempt to cast aspersions upon Axpo's prepetition conduct. First, Axpo had no obligation to provide hedging to the Debtors, nor were the Debtors prohibited from seeking hedging arrangements with other counterparties prior to the

implementation of the ESA[4] in May 2026. Second, the majority of Mr. Wilson's allegations regarding purported misconduct predate Axpo's involvement as a secured creditor, presumably addressing conduct by the debtors' prior secured lender, Capital Foundry. At the Debtors' request, Axpo refinanced certain of those obligations, allowing the Debtors to repay amounts owed to Capital Foundry. Third, the repayment of the Capital Foundry obligations through the ESA, the deferral of the payment of certain of Axpo's supply invoices, and the direction of prepayment proceeds was a specifically negotiated aspect of Axpo's refinancing of the Capital Foundry indebtedness; in other words, this was an accommodation to the Debtors, allowing them to repay obligations that they otherwise could not. Contrary to Mr. Wilson's contentions, Axpo's conduct aided the Debtors and did not restrict the Debtors' operating liquidity. Fourth, Axpo stands by its calculation of Borrowing Base deficiencies and the decision to declare defaults under the ESA; the Debtors were indisputably in default and remain in default to this day. Fifth, Axpo vehemently disputes the insinuation that it ever knowingly withheld payment of funds attributable to unpaid sales taxes. As acknowledged in the Wilson Declaration, Axpo did not exercise control over the lockbox accounts until mid-June 2026, after properly declaring a default of the Debtors' obligations to Axpo. Axpo could not possibly be responsible for withholding funds—owed to taxing authorities or otherwise—prior to that date. And, subsequent to that date, Axpo is not aware that the Debtors ever requested the release of any funds to pay sales taxes; had any such request been made, the funds would have been released without delay. Accordingly, the sole responsibility for any unpaid taxes lies solely with the Debtors and their management. Axpo reserves the right to address and refute any and all of these and other allegations in the Wilson Declaration in detail as and when appropriate in these cases.

[4] Capitalized terms used in this paragraph but not otherwise defined in this Objection shall have the meanings set forth in the Wilson Declaration.

6. While there has been noticeable improvement in the process since the Debtors retained replacement bankruptcy counsel, that alone is not enough to right the ship. Accordingly, Axpo at this point believes that the only viable path to the Debtors' successful emergence from bankruptcy is to move forward expeditiously to appoint a chief restructuring officer (the "CRO") acceptable to Axpo to take over the Debtors' day-to-day operation and, in consultation with both the Debtors and Axpo, formulate a strategy to maximize value to the Debtors' estates and creditors. Axpo stands ready to work with the Debtors to facilitate that process and will consent to the continued use of its Cash Collateral solely to the extent necessary to preserve the value of those assets and support the retention of a CRO. Since the last hearing in these cases, Axpo and the Debtors have engaged in discussions regarding the identification of CRO candidates and the scope and authority of the CRO's retention. Although Axpo has no objection to the individual identified by the Debtors to serve as CRO, it has not, as of the date hereof, arrived at an agreement with the Debtors on the exact terms of such individual's retention and authority. If Axpo and the Debtors are unable to arrive at a consensus, then Axpo will be left with no option but to seek the appointment of a chapter 11 trustee who is capable of maximizing value for the Debtors' estates and creditors.

7. Accordingly, Axpo will consent to the continued use of Cash Collateral on three conditions: *first*, the continued use of Cash Collateral shall be in accordance with the terms of the Interim Budget, as may be revised in consultation between Axpo and the Debtors; *second*, such consent is limited to an interim period ending November 20, 2026 (the "Fourth Interim Period"), with a continued hearing on the use of Cash Collateral to be scheduled the week of November 16, 2026, subject to the Court's availability; and *third*, the use of Cash Collateral during the Fourth Interim Period shall be conditioned upon the Debtors' retention of a CRO on terms acceptable to

Axpo, with such retention to be authorized by the Court on or before the expiration of the Fourth Interim Period, unless otherwise agreed by Axpo in its sole discretion.

8. Absent each of the foregoing protections being incorporated into any order authorizing further use of Cash Collateral, and notwithstanding the protections provided for in the Interim Orders, Axpo submits that it will not be adequately protected and accordingly will not consent to any further use of Cash Collateral beyond the terms of the Interim Orders.

## RESERVATION OF RIGHTS

9. Axpo reserves all rights to supplement or otherwise adopt additional arguments in connection with this Objection in advance of or at the Final Hearing, and Axpo further reserves any and all rights, remedies and objections regarding (i) final approval of revisions to the Interim Budget or any other budget for the use of Cash Collateral proposed by the Debtors, (ii) the terms of any proposed order authorizing the appointment of a CRO; (iii) the terms of any bidding procedures motion, sale motion, or similar motion regarding the sale of all or substantially all of the Debtors' assets, and (iv) any other issues arising in these cases.

[*Remainder of Page Intentionally Left Blank*]

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, Axpo objects to the Debtors' use of Cash Collateral on a final basis as and respectfully request that any order further authorizing Debtors' use of Cash Collateral be conditioned upon the inclusion of the protections requested by Axpo in this Objection.

Dated: October 23, 2026
New York, New York

Respectfully Submitted,

**REED SMITH LLP**

By: /s/ Andrew L. Buck
Andrew L. Buck
599 Lexington Avenue
New York, New York 10022
Telephone: 212.521.5400
Fax: 212.521.5450
Email: abuck@reedsmith.com

- *and* -

Paul D. Moak (*Admitted Pro Hac Vice*)
221 McKinney Street, Suite 2100
Houston, TX 77010
Telephone: 713.469.3800
Fax: 713.469.3800
Email: pmoak@reedsmith.com

*Attorneys for Axpo U.S. LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of October, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CMF/ECF system, which sent notification to all parties of interest participating in the CMF/ECF system.

*/s/ Andrew L. Buck, Esq.*
Andrew L. Buck, Esq.