UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| NEP HOLDINGS INC., et al.,[1] Debtors. | Case No. 26-11988 (DSJ) (Jointly Administered) |

# DEBTORS' APPLICATION PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) AUTHORIZING RETENTION OF LINDENWOOD ASSOCIATES, LLC TO PROVIDE NAT WASSERSTEIN AS CHIEF RESTRUCTURING OFFICER AND RELATED SERVICES

## PRELIMINARY STATEMENT

NEP Holdings Inc., Northeastern Power and Gas, LLC, and Maven Energy, LLC (collectively, the "Debtors"), as debtors and debtors in possession, seek authority to retain Lindenwood Associates, LLC ("Lindenwood") to provide its managing partner Nat Wasserstein as chief restructuring officer ("CRO"), and related management services, on the terms of the engagement letter attached as Exhibit A (the "Engagement Letter"), subject to the qualifications herein and the annexed proposed order. The Debtors made this selection in their independent business judgment to bring experienced restructuring leadership to complex, ongoing chapter 11 cases, preserve enterprise value, maximize creditor recoveries, and pursue a feasible emergence from chapter 11. Secured creditor, Axpo U.S. LLC ("Axpo") has consented to the proposed appointment;[2] the appointment is the Debtors' decision and does not confer upon Axpo direction or control of the CRO.

## JURISDICTION AND BACKGROUND

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: NEP Holdings Inc. (2807), Case No. 26-11988 (DSJ); Northeastern Power and Gas, LLC (3206), Case No. 26-11989 (DSJ); and Maven Energy, LLC (7779), Case No. 26-11990 (DSJ) The Debtors' principal place of business is 260 Madison Avenue, 8th Floor, New York, New York 10016.

[2] Axpo's consent and the proposed appointment by the Debtors does not release, waive, or resolve any claims, defenses, or disputes between the Debtors and Axpo.

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334; venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core matter under 28 U.S.C. § 157(b)(2). The statutory bases are sections 105(a) and 363(b) of title 11. Each Debtor filed a chapter 11 petition on August 19, 2026 and continues to operate under sections 1107 and 1108. The cases are jointly administered under Case No. 26-11988 (DSJ), before the Honorable David S. Jones. The Debtors incorporate by reference the October 13, 2026 declaration of Perry Wilson under Local Bankruptcy Rule 1007-2.

**THE BUSINESS NEED FOR A CRO**

2. The Debtors are retail suppliers of electricity and natural gas to residential, commercial, and industrial customers in New York, New Jersey, and Massachusetts. Revenue increased from approximately $11.7 million in 2024 to $19.5 million in 2025, but liquidity constraints, commodity hedging exposure, lender relationship(s), and cash management challenges led to these cases. The Debtors' business requires ongoing customer service, wholesale supply arrangements, regulatory compliance, accurate financial controls, and close monitoring of commodity risk. A seasoned CRO can bring independent restructuring expertise while existing management supplies industry-specific knowledge. The Debtors seek to stabilize their businesses, meet chapter 11 obligations, assess restructuring alternatives, and formulate and confirm a value-maximizing plan.

**QUALIFICATIONS AND SELECTION**

3. Nat Wasserstein, JD, MBA, CFE, is the managing partner of Lindenwood. The Debtors have selected Mr. Wasserstein based on his restructuring and financial management experience and their assessment of his ability to supervise the required work. His detailed professional background and relevant engagements are detailed in his accompanying declaration. Perry Wilson will remain CEO, reporting to the CRO on all matters within the

Engagement Letter's scope. The CRO will exercise his duties on behalf of the Debtors and their estates, not any particular creditor or other party in interest.

## SCOPE AND AUTHORITY

4. Under the Engagement Letter, Lindenwood will oversee accounting, bookkeeping, and financial reporting; strengthen hedging oversight and risk management; maintain a rolling 13-week cash forecast; direct postpetition operations in coordination with management; communicate with the United States Trustee, creditors, regulators, and counterparties; coordinate with bankruptcy counsel concerning cash collateral, reporting, and plan development; coordinate other advisors and Debtor professionals; and implement restructuring budgets and stakeholder reporting. The proposed delegation includes executive-level authority, communications, execution of appropriate documents, and banking and disbursement authority, in each instance subject to the Bankruptcy Code, applicable orders, budgets, and corporate governance requirements. The Debtors will supply appropriate authorizing resolutions and letters of authority. No authority is sought to override the Court's approval requirements, applicable cash-collateral restrictions, or duties owed to the estates.

## FEES, EXPENSES AND REPORTING

5. The Engagement Letter provides a flat monthly fee of $25,000 for the engagement and, if additional accounting services are necessary, $525 per hour for such services. Lindenwood may seek reimbursement of reasonable direct expenses. The Debtors request approval only to the extent consistent with the proposed order, the Engagement Letter and applicable bankruptcy law. Lindenwood will submit monthly invoices and file and serve monthly staffing and compensation reports identifying work performed, personnel, fees and expenses, with time records sufficient for review, including time entries for additional hourly accounting services. Payment will be subject to applicable cash-collateral budgets and any order of this Court. The Debtors propose a fourteen-

day objection period after service of each report, with disputed amounts reserved for Court determination. No separate applications under sections 330 and 331 would ordinarily be required for the authorized CRO management services, but the Court retains authority to review reasonableness.

**DISCLOSURES AND CONFLICTS**

6. Although the Debtors request employment of a CRO as an officer/management provider under section 363(b), rather than employment of a professional under section 327, they will provide disclosures comparable to those required by Bankruptcy Rule 2014 and the applicable United States Trustee CRO protocol. Mr. Wasserstein's declaration identifies all relevant connections with the Debtors, Axpo, other creditors, professionals, and parties in interest, any prior services or compensation, and whether Lindenwood or its personnel have any interest adverse to the estates. The Debtors request approval conditioned upon satisfactory disclosure and prompt supplementation, as necessary.

**LEGAL BASIS**

7. Section 363(b)(1) permits a debtor in possession, after notice and a hearing, to use estate property outside the ordinary course of business when supported by an articulated business justification. *Comm. of Equity Sec. Holders v. Lionel Corp.* (In re Lionel Corp.), 722 F.2d 1063, 1070–71 (2d Cir. 1983). Section 105(a) authorizes orders necessary or appropriate to carry out the Bankruptcy Code, but does not supply independent authority inconsistent with the Code. Courts in this District have recognized the use of sections 105(a) and 363(b) to approve CRO management engagements. See *In re Nine West Holdings, Inc.*, 588 B.R. 678, 687–90 (Bankr. S.D.N.Y. 2018); *In re K.G. IM, LLC*, 620 B.R. 469, 486–87 (Bankr. S.D.N.Y. 2020); see also *In re Genever Holdings, LLC*, No. 20-12411 (JLG), 2021 WL 3919826, at *13 (Bankr. S.D.N.Y. Sept. 1, 2021) (discussing CRO protocol). These decisions recognize that the J. Alix Protocol is not itself binding

law, while its disclosure, independence and fee-review safeguards inform the Court's evaluation. The Debtors' decision to engage Lindenwood for a defined management function, at a disclosed fee and subject to Court supervision, is a reasonable exercise of business judgment. The engagement will assist the Debtors in fulfilling their fiduciary and statutory responsibilities, protecting ongoing operations, and evaluating a confirmable plan.

**INDEMNIFICATION AND LIMITATIONS**

8. To the extent the Engagement Letter or its standard terms provide indemnification, limitation of liability, reimbursement of legal fees, or similar protections, the Debtors request approval only subject to customary bankruptcy limitations and further Court review. No indemnification shall be available for gross negligence, willful misconduct, bad faith, fraud, or criminal conduct as determined by final order, and no advance payment of defense costs or payment of indemnity obligations shall occur absent further Court authorization. Any indemnity for professional negligence or other acts shall be limited by the terms of the Court's order. No contractual provision shall diminish the Court's supervisory authority.

**NOTICE AND REQUEST FOR RELIEF**

9. Notice of this Application will be provided to the United States Trustee, Axpo and its counsel, any committee appointed in these cases, the 20 largest general unsecured creditors, and other parties entitled to notice under the Bankruptcy Rules and applicable local rules. No prior request for the same relief has been made, except as may be disclosed before filing.

WHEREFORE, the Debtors request entry of an order authorizing retention of Lindenwood to provide Nat Wasserstein as CRO effective as of November 1, 2026, approving the engagement subject to the limitations described herein, authorizing payment subject to Court review and applicable budgets, and granting such other relief as is just and proper.

Dated: Roslyn, New York
November 4, 2026

SPENCE LAW OFFICE, P.C.
*Proposed Attorneys for Debtors*
By: *s/ Robert J. Spence*
Robert J. Spence, Esq.
55 Lumber Road, Ste 5
Roslyn, New York 11576
516-336-2060

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| NEP HOLDINGS INC., et al.,[1] Debtors. | Case No. 26-11988 (DSJ) (Jointly Administered) |

**DECLARATION OF NAT WASSERSTEIN IN SUPPORT OF APPLICATION TO RETAIN LINDENWOOD ASSOCIATES, LLC TO PROVIDE CHIEF RESTRUCTURING OFFICER AND RELATED SERVICES**

I, Nat Wasserstein, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Managing Partner of Lindenwood Associates, LLC ("Lindenwood"), and am designated to serve as Chief Restructuring Officer ("CRO") of NEP Holdings Inc., Northeastern Power and Gas, LLC, and Maven Energy, LLC (collectively, the "Debtors"), subject to approval by this Court. I am authorized to make this declaration on behalf of Lindenwood. Except as otherwise stated, the facts herein are based on personal knowledge or my review of Lindenwood's records.

2. I hold a J.D., M.B.A., and Certified Fraud Examiner designation. I have experience in restructuring, financial advisory services and distressed-company management. I have been the appointed CRO in numerous bankruptcy cases in the Southern and Eastern Districts of New York and the District of Delaware as well as in out-of-court workout matters to initiate and coordinate restructuring actions. I am also on the panel of Subchapter V Trustees in both the Eastern and Southern Districts of New York.

3. I understand the Debtors operate retail electricity and natural gas supply businesses in New York, New Jersey and Massachusetts. My proposed assignment is to assist their management in preserving going-concern value, improving financial controls, addressing liquidity and commodity-risk management, satisfying chapter 11 reporting obligations, and evaluating reorganization alternatives.

4. Lindenwood and the Debtors have negotiated the engagement letter dated as of November 1, 2026 (the "Engagement Letter"), a complete executed copy of which, including its standard terms, will be submitted with the Application. Under that agreement I will serve as CRO, while Perry Wilson remains CEO and management reports to me on all matters within the defined engagement scope, subject to the Debtors' governance and orders of this Court.

5. My duties include, among other things, oversight of accounting and reporting, a rolling 13-week cash-flow forecast, cash management, hedging and risk oversight, communications with stakeholders, coordination with bankruptcy counsel, and development of restructuring alternatives. My duties do not include rendering legal advice. I have reviewed the attached Proposed Order and the responsibilities therein are agreed and acceptable.

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: NEP Holdings Inc. (2807), Case No. 26-11988 (DSJ); Northeastern Power and Gas, LLC (3206), Case No. 26-11989 (DSJ); and Maven Energy, LLC (7779), Case No. 26-11990 (DSJ) The Debtors' principal place of business is 260 Madison Avenue, 8th Floor, New York, New York 10016.

6. Lindenwood's proposed fee is $25,000 per month, plus reimbursement of reasonable expenses. If additional accounting services are needed, the Engagement Letter contemplates services at $525 per hour, including services potentially performed by Bruce Berger, CPA, CVA, CFE. Such additional services, any use of affiliates or contractors, and material modifications remain subject to the scope of the Court's order and any required further approval. Lindenwood is aware that the Debtors have engaged an accountant in these cases subject to Bankruptcy Court approval and will not duplicate the services being provided by the accountant. It is my understanding that the accountant is also providing all bookkeeping services required by the Debtors and in these cases.

7. Lindenwood will maintain appropriate time and expense records and submit monthly reports in accordance with the retention order.

8. In preparing this declaration, I have caused a review of Lindenwood's records for connections with the Debtors, their officers and equity holders, Axpo U.S. LLC and its affiliates, other secured creditors, significant unsecured creditors, the United States Trustee, the Debtors' professionals, and other known parties in interest. Neither Lindenwood not its members have any connection to the foregoing parties except the Debtor's counsel Spence Law Office, P.C. ("Spence Law"). Spence Law has previously represented Nat Wasserstein in his role as Chapter 7 Trustee and Plan Administrator in unrelated cases: *Prime Scuba, Inc.,* Case No. 20-44415-jmm (Bankr. EDNY) and *VTES, Inc.,* Case No. 20-12941 (JLG) (Bankr. SDNY). These engagements are no longer pending. Lindenwood has also been a financial advisor, accountant and CRO on other cases in which Spence Law represented the same or different parties in the same case(s).

9. To the best of my knowledge, Lindenwood and I have no interest materially adverse to the estates in connection with the services contemplated. I understand that our appointment as management under section 363 does not eliminate the obligation to disclose relevant connections. We will promptly supplement these disclosures if additional material connections are discovered.

10. Axpo has indicated its consent to my appointment. I understand that I would serve the Debtors and their estates, not Axpo, and that its consent does not limit the Debtors' rights, claims, defenses or independent business judgment.

11. I believe the proposed engagement terms are commercially reasonable in light of the responsibilities involved, subject to the limitations imposed by this Court, and that my appointment would assist the Debtors in maximizing value for creditors and pursuing a feasible chapter 11 exit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: November 3, 2026 at Sparkill, New York

____________________________
Nat Wasserstein

# EXHIBIT A

LINDENWOOD
ASSOCIATES LLC

Nat Wasserstein, JD, MBA, CFE
Mobile: (917) 670-7302
nat@lindenwoodassociates.com
P.O. Box 181
Sparkill, New York 10976

As of November 1, 2026

Perry Wilson
Chief Executive Officer
Northeastern Power & Gas, LLC
260 Madison Avenue, 8th Floor
New York, NY 10016

**Re**: **Retention as Financial Advisor and Chief Restructuring Officer**

Dear Perry:

This letter confirms that Lindenwood Associates, LLC ("Lindenwood") has been retained by Northeastern Power & Gas, LLC, together with its parent, NEP Holdings, Inc., and its affiliate, Maven Energy, LLC (collectively, "NEP"), acting through Perry Wilson, Chief Executive Officer, effective November 1, 2026. Lindenwood has been engaged to provide certain financial advisory and consulting services (the "Services") as set forth below. This letter of engagement (the "Engagement") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided. NEP commenced a Chapter 11 case (the "Case") under Title 11 of the United States Code (the "Bankruptcy Code") on August 19, 2026, jointly administered in the United States Bankruptcy Court for the Southern District of New York (the Honorable David S. Jones) as Case No. 26-11988 (DSJ) (NEP Holdings, Inc.), with related Case No. 26-11989 (Northeastern Power and Gas, LLC) and Case No. 26-11990 (Maven Energy, LLC), and Lindenwood will apply to serve as Chief Restructuring Officer ("CRO") and/or Financial Advisor in the Case, with Nat Wasserstein designated to serve as CRO on Lindenwood's behalf. Perry Wilson shall continue to serve as Chief Executive Officer of NEP and shall report to the CRO on all matters within the scope of the Engagement.

**Scope of Our Services**

- Oversee and supervise NEP's accounting, bookkeeping, and financial reporting functions, including the work of existing bookkeeping and accounting personnel.
- Strengthen hedging oversight and risk management specific to NEP's energy trading and retail delivery business, including oversight of a rolling 13-week cash flow forecast.
- Direct post-petition operations in coordination with the Chief Executive Officer and existing management, with the Chief Executive Officer reporting to the CRO on all financial and operational matters within the scope of the Engagement.

- Serve as principal point of contact for the U.S. Trustee, secured lender(s), any creditors' committee, and the Bankruptcy Court on business and financial matters.
- Coordinate with bankruptcy counsel in the administration of the Case, including compliance with statutory and procedural requirements, cash collateral/DIP matters, and plan development.
- Coordinate with NEP's other advisors, including but not limited to appraisers, investment bankers, and auctioneers, so that any restructuring, financing, or sale alternative is pursued without duplication of effort.
- Develop and implement a restructuring budget and plan, including stakeholder reporting and claims reconciliation as applicable.

To the extent additional accounting related services are required due to limited accounting personnel at NEP, such services may be provided by Lindenwood's co-managing partner, Bruce Berger, a Certified Public Accountant (CPA), Certified Valuation Analyst (CVA), and Certified Fraud Examiner (CFE). Lindenwood will not duplicate services already being provided by TFG Related Entities - Fuoco Group.

**<u>Authority and Support</u>**

(a) Reporting Line. During the term of this Engagement, all officers of NEP, including without limitation the Chief Executive Officer and Chief Financial Officer (or, if no separate Chief Financial Officer is then serving, whoever is performing that function), shall report directly to the CRO on all matters within the scope of the Engagement.

(b) Delegated Authority. For purposes of effectuating the Services, the CRO shall have the authority customarily afforded to a senior executive officer of NEP, including the combined authority ordinarily exercised by a Chief Executive Officer and a Chief Financial Officer, and may act on NEP's behalf in connection with matters necessary to accomplish the Services, subject in each case to applicable provisions of the Bankruptcy Code and any order of the Bankruptcy Court. Such authority shall include, without limitation, the authority to: (i) communicate with and provide information to the U.S. Trustee, secured lender(s), any creditors' committee, regulators, counterparties, employees, and other stakeholders; (ii) execute and deliver documents, agreements, and correspondence in the name of NEP, subject to any required Bankruptcy Court approval; (iii) manage NEP's banking and financial accounts, including initiating transfers and disbursements consistent with the Case budget and any cash collateral or DIP order then in effect; (iv) effectuate and/or propose a plan of reorganization and/or a sale, and (iv) take such other actions as are reasonably required in furtherance of the Services.

(c) Letter of Authority. Within five (5) business days of the Effective Date, NEP shall provide the CRO with a duly executed letter of authority confirming the CRO's role and delegated authority as set forth herein, substantially in the form attached as **Exhibit A**.

(d) Board Resolutions. NEP shall also provide the CRO with duly adopted resolutions of the board of directors (or equivalent governing body) of each of Northeastern Power & Gas, LLC, NEP Holdings, Inc., and Maven Energy, LLC, authorizing this Engagement, the reporting line of all officers to the CRO, and the CRO's delegated authority as set forth herein, substantially in the form attached as **Exhibit A**.

As part of the Services, Lindenwood may be requested to assist NEP (and its legal or other advisors) in negotiating with NEP's creditors and equity holders and with other interested parties. If we participate in such negotiations, the representations made and the positions advanced will be those of NEP and its management, not Lindenwood or its employees. The services we provide in connection with the Engagement will encompass only the Services set forth above, if they are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with NEP as to the nature of the services that we will render and the scope of our engagement.

As usual, our Engagement is to represent NEP and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities. Such advice, however, shall not be deemed to create an engagement or relationship between us and such directors, officers, or employees, nor shall such advise in any way create any obligation or duty between us and such directors, officers or employees.

Lindenwood may from time-to-time need to communicate with NEP's secured lenders, if applicable. If any verbal communication takes place, Lindenwood will make reasonable efforts to timely notify NEP of any material communications. Lindenwood will copy NEP's counsel on all written communications with its secured lender.

**Our responsibilities and limitations**

We will perform the Services in a professional manner using reasonable skill, care and attention. We will use personnel qualified to perform the Services requested by NEP.

We will assume no responsibility and make no representations with respect to the accuracy or completeness of information provided by NEP, but we will notify NEP if we learn or have reason to believe that any information that you provide to us is incorrect or inaccurate or otherwise should not be relied upon. Moreover, our work cannot provide assurance that matters of significance to the financial information or to the decision-making process at NEP will be disclosed. Further, our work is not designed to and is not likely to reveal fraud or misrepresentation by the management of NEP.

Our work does not include the provision of legal or accounting advice and should not be construed as such. We understand that you have retained legal counsel accountants and will be relying upon your counsel for legal advice and your accountants for accounting advice. We make no representations regarding questions of legal interpretation. To the extent that we are requested and

we perform due diligence work on tax or tax advisory work that involves the interpretation of tax law, we will report or advise on the basis of our understanding of the proper interpretation of tax legislation, court decisions, regulations and interpretations of the law in existence at the time of services performed, but such information and interpretation should not serve as a substitute for legal or tax advice from licensed or qualified counsel or accountants. Changes in the law and/or its interpretation may take place before our advice is acted upon or may be retrospective in effect; we accept no responsibility for changes in the law or its interpretation which may occur after the provision of such services.

**Fees**

Fees in connection with this Engagement will be $25,000 per month. If additional accounting related services are required due to the limited accounting personnel at NEP, the fee for those services shall be based upon the time incurred providing the Services, multiplied by our standard hourly rate for such services of $525 per hour.

Hourly rates are generally revised periodically; as such, they are subject to change during our Engagement. Note that we do not provide any assurance regarding the outcome of our work and our hourly fees will not be contingent on the results of such work.

In addition to the fees outlines above, Lindenwood will bill for reasonable direct expenses which are likely to be incurred on your behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, mileage, meals, accommodations, and other expenses specifically related to the engagement. Further, if Lindenwood and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, Lindenwood will be compensated by you at its regular hourly rates for all time incurred in such proceedings, including time for preparation, travel and court appearances. You will also reimburse Lindenwood for all reasonably allocated and direct expenses (including counsel fees) with respect thereto. NEP shall pay all Lindenwood's costs and expenses, including actual attorney's fees, incurred in seeking to enforce the terms of this Engagement.

We will send NEP invoices every month for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a certain date. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services, provided we agree to be bound by whatever payment terms are required by the Bankruptcy Code or as may otherwise be approved by the Bankruptcy Court, without prejudice to NEP's right to advise us of differences it may have with respect to such invoice.

**Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. The Standard Terms and Conditions are incorporated as though fully set forth therein. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement

Contract for the provision of the Services to the exclusion of any other expenses or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations and shall supersede all previous letters of engagement, undertakings, agreements, and correspondence regarding the Services.

**Other matters**

Either of us may request changes to the work we will perform. Change must be agreed between us in writing and will be subject to reasonable adjustments in fees and timetable, as well as the deposit of additional funds on account. Changes which amount to the provision of significant additional services, rather than adjustments to the services already agreed, must be agreed in writing. We understand that any such substantive changes to the work we will perform, or the fees set forth herein, shall be subject to prior Bankruptcy Court approval, if applicable.

**Other Engagements**

Lindenwood shall have the right to accept other engagements and work on other engagements during the term of this Agreement, provided such engagements do not negatively impact the ability of Lindenwood to perform the Services hereunder.

Please acknowledge your acceptance of the terms of this Engagement Contract by signing and returning a copy to us. Thank you.

Lindenwood Associates, LLC

By: ______________________
Nat Wasserstein
Managing Partner

Confirmation of Terms of Engagement:

We agree to engage Lindenwood Associates, LLC upon the terms set forth and in the attached Standard Terms and Conditions.

**NORTHEASTERN POWER & GAS, LLC**

By: ______________________

Perry Wilson, Chief Executive Officer

**NEP HOLDINGS, INC.**

By: ______________________

Perry Wilson, Chief Executive Officer

**MAVEN ENERGY, LLC**

By: ______________________________

Perry Wilson, Chief Executive Officer     Date: 11/4/2026

# STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached Letter of Engagement with Northeastern Power & Gas, LLC, NEP Holdings, Inc., and Maven Energy, LLC (collectively, "Northeastern Power" or "NEP") dated as of November 1, 2026. The Engagement Letter and the Standard Terms and Conditions (collectively, the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence, and other communications, whether written or oral, regarding to the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract or otherwise change or limit the provisions to which they apply. Any term defined in the Letter of Engagement shall have the same definition set forth in the Standard Terms and Conditions.

## 1. Reports and Advice

1.1 Use and purpose of advice reports, Any advice given, or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not: provide any advice given or report issued by us to any third party; or refer to us or the Services without our prior written consent, which will not be unreasonably withheld and may require a non-reliance agreement by the third party. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

## 2. Information and Assistance

2.1 Provision of information and assistance, Our performance of the Services is dependent on you, providing us with such information and assistance as we may reasonably require from time to time.
2.2 Punctual and accurate information, You shall use reasonable skill, care and attention to ensure that all information we may reasonably require from you is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You shall also notify us if you subsequently learn that the information provided is incorrect and inaccurate or otherwise should be not be relied upon.

2.3 No assurance on financial data, While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation, or review of any kind of financial statements or components thereof. NEP management will be responsible for any and all financial information they provide to us during the course of the Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations

in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of NEP.

2.4 Prospective financial information, In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of NEP.

**3. <u>Additional Services</u>**

3.1 Responsibility for other parties, You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

**4. <u>Confidentiality</u>**

4.1 Restrictions on confidential information, Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's written consent. Confidential information shall not include information that:

4.1.1. is or becomes available to the public other than as a result of a breach of an obligation under this Clause 4.1
4.1.2. is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect to the information
4.1.3. is or has been independently developed by the recipient without resort to or use of any confidential information or any other party or any of its affiliates; or
4.1.4. is required to be disclosed by the Bankruptcy Court or by the Bankruptcy Code in the Case

4.2 Disclosing confidential information, Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, applicable law, rule or regulation, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less that 2 business days' notice in writing is first given to the other party.

4.3 Citation of engagement, Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public following commencement of NEP's anticipated bankruptcy case, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless you specifically request otherwise in writing.

4.4 Internal quality reviews, Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other Lindenwood entity, to your legal counsel, or use it for internal quality reviews, so long as Lindenwood entity agrees to be bound by the restriction in Clause 4.

4.5 Maintenance of workpapers, Notwithstanding the above, we may keep one archival set of our working papers from, as well as any other documents created as a result of, the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

**5. Termination**

5.1 Termination of Engagement with notice, Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party, provided that any such termination without cause shall require 30 days prior written notice to the other party. Upon the effectiveness of such notice, we will stop all work immediately. You will be responsible for all fees and expenses incurred by us through the date on which any such termination becomes effective. Notwithstanding the foregoing,

5.2 Continuation of terms, The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, The Fees and Terms and Conditions sections of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

**6. Indemnification and Liability Limitation; Waiver of Jury Trial**

6.1 Indemnification, You agree to indemnify and hold harmless Lindenwood and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of Lindenwood, the execution and delivery of this Engagement Contract, the provision of Services our other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have resulted from the gross negligence or willful misconduct of any Indemnified Person or Persons. Lindenwood shall promptly notify NEP of any claim for which indemnification may be requested and NEP shall be entitled at its expense to control the defense and settlement thereof with reasonably acceptable counsel, except to the extent that doing so would create a conflict of interest warranting the retention by the Indemnified Persons of their own counsel, the cost of which shall be borne by NEP. No Indemnified Person

shall settle any claim without the express written consent of NEP, and the applicable Indemnified Persons shall reasonably cooperate (at NEP's expense) with NEP in connection with any defense of such claim and shall consent to any settlement recommended by NEP if NEP pays or arranges for payment of the full amount thereof, and such settlement includes a release of such Indemnified Persons from all liability in respect of such claim. NEP shall direct its Directors' and Officers' Liability Insurance ("D&O Insurance") provider to name Lindenwood, and its principals Nat Wasserstein and Bruce Berger, as additional insureds under such policy, and shall provide Lindenwood with a certificate of insurance evidencing such coverage.

6.2 Limitation of liability, You agree that no Indemnified Person shall have any liability as a result of your retention of Lindenwood, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to our arising from this Engagement Contract, other than liabilities that shall have or have resulted from the gross negligence or willful misconduct of any Indemnified Person to be liable for indirect or punitive damages or other like damages or claims of any kind. Notwithstanding the foregoing, Lindenwood's total damages with respect to a breach of its obligations under this engagement shall not exceed the total amount of fees paid to Lindenwood hereunder.

6.3 WAIVER OF JURY TRIAL, TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, COMPANY AND LINDENWOOD IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND, AND EXPLICITLY WAIVE, A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER.

**7. Governing Law and Jurisdiction**

7.1 Governing Law and Jurisdiction, The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York without giving effect to the choice of law provisions thereof as well as the Bankruptcy Code, if applicable. If applicable, the United States Bankruptcy Court for the Southern District of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

# **EXHIBIT A**

Board Resolutions and Letter of Authority

**Form of Board Resolution (A-1)**

Resolutions of the Board of Directors (or equivalent governing body)

Adopted as of [____________________]

WHEREAS, the Board of Directors (the "Board") of the undersigned entity, on behalf of itself and, where applicable, in coordination with each of Northeastern Power & Gas, LLC, NEP Holdings, Inc., and Maven Energy, LLC (collectively, "Northeastern Power" or "NEP"), has determined that it is in the best interests of NEP to engage Lindenwood Associates, LLC, acting through Nat Wasserstein as Chief Restructuring Officer ("CRO"), pursuant to the Engagement Contract dated [____________________];

NOW, THEREFORE, BE IT RESOLVED, that the Board hereby authorizes NEP to engage Lindenwood pursuant to the Engagement Contract, and ratifies and approves the execution and delivery thereof;

FURTHER RESOLVED, that all officers of NEP, including the Chief Executive Officer and Chief Financial Officer, shall report directly to the CRO on all matters within the scope of the Engagement, and that the CRO shall be vested with the authority customarily afforded to a senior executive officer of NEP, including the combined authority ordinarily exercised by a Chief Executive Officer and a Chief Financial Officer;

FURTHER RESOLVED, that the CRO is authorized to take all actions necessary or desirable to carry out the Services, subject to applicable provisions of the Bankruptcy Code and any order of the Bankruptcy Court, including, without limitation:

- Communicating with the U.S. Trustee, secured lender(s), any creditors' committee, regulators, counterparties, employees, and other stakeholders;
- Executing and delivering documents, agreements, and correspondence in the name of NEP;
- Managing and directing NEP's banking and financial accounts, including initiating transfers, disbursements, and related transactions consistent with the Case budget and any cash collateral or DIP order; and
- Taking such other actions as are reasonably required in furtherance of the Services;

FURTHER RESOLVED, that the officers of NEP are directed to prepare and issue a Letter of Authority in the form attached hereto as (A-2), confirming the CRO's authority to act on behalf of NEP, and that all third parties may rely on such letter as evidence of such authority;

FURTHER RESOLVED, that these resolutions shall remain in effect until revoked or amended by the Board, or further order of the Bankruptcy Court.

IN WITNESS WHEREOF, the undersigned, being all of the members of the Board of Directors (or equivalent governing body), have executed these resolutions as of the date first written above.

Perry Wilson

Chief Executive Officer

[Additional Director Signature Blocks, if applicable]

**Form of Letter of Authority (A-2)**

[On NEP Letterhead]

[____________________]

To Whom It May Concern:

The Board of Directors (or equivalent governing body) of each of Northeastern Power & Gas, LLC, NEP Holdings, Inc., and Maven Energy, LLC (collectively, "Northeastern Power" or "NEP") has authorized the engagement of Lindenwood Associates, LLC, acting through Nat Wasserstein as Chief Restructuring Officer ("CRO"), to provide the Services described in the Engagement Contract dated [____________________].

Accordingly, the undersigned, on behalf of the Board, confirms that:

Delegated Authority. The CRO is authorized to act on behalf of NEP in connection with the Services, with the authority customarily afforded to a senior executive officer of NEP, including the combined authority ordinarily exercised by a Chief Executive Officer and a Chief Financial Officer.

Reporting Line. All officers of NEP, including the Chief Executive Officer and Chief Financial Officer, shall report directly to the CRO on all matters within the scope of the Engagement.

Scope of Authority. Without limitation, the CRO is authorized to: communicate with the U.S. Trustee, secured lender(s), any creditors' committee, regulators, counterparties, employees, and other stakeholders; execute and deliver documents, correspondence, and agreements in the name of NEP; manage and direct NEP's banking and financial accounts, including initiating transfers, disbursements, and related transactions consistent with the Case budget and any cash collateral or DIP order; and take such other actions as are reasonably required in furtherance of the Services.

Reliance. All third parties may rely on this Letter of Authority as evidence of the CRO's authority to act on behalf of NEP for the purposes described above.

This authority shall remain in full force and effect until revoked in writing by the Board, or further order of the Bankruptcy Court.

Sincerely,

Perry Wilson

Chief Executive Officer

For and on behalf of the Board of Directors

Northeastern Power & Gas, LLC / NEP Holdings, Inc. / Maven Energy, LLC

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| NEP HOLDINGS INC., et al.,[1] Debtors. | Case No. 26-11988 (DSJ) (Jointly Administered) |

**PROPOSED ORDER AUTHORIZING RETENTION OF LINDENWOOD ASSOCIATES, LLC TO PROVIDE NAT WASSERSTEIN AS CHIEF RESTRUCTURING OFFICER AND RELATED SERVICES**

Upon the application (the "Application") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for authority under 11 U.S.C. §§ 105(a) and 363(b) to retain Lindenwood Associates, LLC ("Lindenwood") to provide Nat Wasserstein as Chief Restructuring Officer ("CRO"); and the Court having considered the Application, the declaration of Nat Wasserstein and the engagement letter, including standard terms (the "Engagement Letter"); and due and sufficient notice having been given; and good cause appearing, it is hereby ORDERED:

1. The Application is GRANTED to the extent set forth herein.

2. Pursuant to 11 U.S.C. §§ 105(a) and 363(b), the Debtors are authorized to retain Lindenwood to provide Nat Wasserstein as CRO and the related services specifically described in the Application and Engagement Letter, effective November 1, 2026. The CRO is engaged as a management officer under section 363, not as a professional retained under section 327.

3. The CRO may exercise the management and financial oversight authority described in the Engagement Letter, subject at all times to applicable law, the Debtors' governing documents,

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: NEP Holdings Inc. (2807), Case No. 26-11988 (DSJ); Northeastern Power and Gas, LLC (3206), Case No. 26-11989 (DSJ); and Maven Energy, LLC (7779), Case No. 26-11990 (DSJ) The Debtors' principal place of business is 260 Madison Avenue, 8th Floor, New York, New York 10016.

fiduciary duties, and further orders of this Court. No provision authorizes any transaction requiring separate Court approval or permits violation of a cash collateral order. In addition:

- On a weekly basis, starting on [November __, 2026], and continuing each [______________] thereafter until otherwise ordered by this Court, the CRO shall provide, or cause to be provided, reports to Axpo (via email to kamal.khoury@axpo.com, thomas.pagnotta@axpo.com, and erica.hough@axpo.com) with a copy to be provided to Debtor's counsel (via email to rspence@spencelawpc.com) providing a transaction detail from the prior week, to the extent reasonably available from the Debtors' books and records, including the dates, amounts, general descriptions, and payors and payees of each receipt and disbursement from the prior week. Axpo shall treat such reports as confidential.

- The CRO shall make himself reasonably available for a telephonic or video conference with Axpo not less than once per week during the first thirty (30) days following entry of this Order, and not less than once every two (2) weeks thereafter, at a mutually convenient time, and at such additional times as Axpo may reasonably request on reasonable advance notice, taking into account the CRO's other duties and responsibilities in these chapter 11 cases.

- The CRO shall have sole-decision making authority over all of the Debtors' operations during the pendency of these chapter 11cases. Such sole-decision making power and authority shall include, but shall not be limited to:
    - unrestricted access to, and - subject to any Court Orders and/or UST Guidelines - complete control over, the Debtors' cash and bank deposit accounts;
    - management of the Debtors' leases and contracts;
    - investigation and pursuit, subject to his sole discretion, of estate causes of action;
    - development and implementation of a strategy for the Debtors' emergence from bankruptcy, including, without limitation, through a Plan and/or a sale or liquidation of any or all of the debtors' assets; and

- Perry Wilson shall not restrict, inhibit, or otherwise interfere with the CRO's responsibilities set forth in this Order. For the avoidance of doubt, and notwithstanding this provision, Mr. Wilson may participate in any company business or duties requested of or delegated to him by the CRO, provided such matters do not involve Mr. Wilson making business decisions for the companies. As soon as reasonably practicable following entry of this Order, but in no event more than three (3) business days hereafter, the Debtors shall file a notice with this Court evidencing the appropriate corporate resolutions, or similar governance documentation, appointing the CRO consistent with the terms of this paragraph and this Order.

4. Lindenwood is authorized to receive compensation of $25,000 per month and reimbursement of actual, reasonable and necessary out-of-pocket expenses, subject to the procedures below and the applicable cash collateral budget or other financing orders.

5. Additional accounting services at $525 per hour shall be performed only upon written authorization of the Debtors, with separate itemization and identification of personnel and time. No new categories of material services, material fee changes, or substitution of the designated CRO shall be authorized without further Court approval upon notice. Use of affiliates, subsidiaries, agents, independent contractors or additional personnel shall require prior disclosure of their identities and connections and, where material, further Court approval.

6. By the twentieth day of each month, Lindenwood shall file and serve on the United States Trustee, counsel for Axpo, and counsel for any official committee a report for the preceding month stating the services performed, monthly compensation earned, expenses incurred, and separately itemized additional hourly services. Lindenwood shall maintain contemporaneous time records; hourly work shall be recorded in tenths of an hour, and CRO flat-fee work shall be described with sufficient detail to permit review.

7. Any party in interest may object to a monthly report within fourteen (14) days after service. In the absence of an objection, the Debtors may pay the reported fees and expenses, subject to available authority to use funds. If an objection is timely filed, the disputed amount shall not be paid pending agreement or further order; undisputed amounts may be paid. The Court retains jurisdiction to review compensation and expenses upon objection or motion.

8. Neither Lindenwood nor the CRO is required to submit applications under 11 U.S.C. §§ 330 and 331 solely for the CRO management services authorized by this Order. This paragraph does not relieve them of the reporting and review obligations herein.

9. Notwithstanding anything in the Engagement Letter, no indemnification, contribution, limitation of liability, advancement of defense costs, or reimbursement of enforcement-related attorneys' fees shall be effective without further order of this Court on notice

to the United States Trustee and other parties entitled to notice. No provision shall shield gross negligence, willful misconduct, bad faith, fraud or breach of fiduciary duty.

10. Lindenwood and the CRO shall supplement their disclosures promptly upon learning of any material connection or potential conflict.

11. The Debtors and Axpo retain their defenses, rights and claims against each other and all other parties.

12. No provision of this Order grants Axpo control over the CRO or waives any estate rights.

13. In the event of any inconsistency between this Order and the Engagement Letter, this Order controls. Nothing herein authorizes payment of prepetition claims or obligations without separate Court authorization.

14. The Court retains jurisdiction to hear and determine all matters arising from the interpretation or implementation of this Order.

Dated: New York, New York

______________, 2026

_________________________________
HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE